Alton M. OGARD, Appellant,

v.

Lee Ann OGARD, Appellee.

No. S–3225.

Supreme Court of Alaska.

April 5, 1991.

Helen L. Simpson, Anchorage, for appellant.

Robert C. Ely, Wade & De Young, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

This appeal challenges several interim and final rulings of the superior court in a divorce action between Lee Ann Ogard and Alton Ogard.

### I. *Interim Child Support Award*

Alton challenges a March 25, 1988 trial court order which required him to pay $900 per month in interim child support. The obligation was made retroactive to the parties' date of separation, April 1, 1986, and was to continue until final resolution of the case.

While Alton clearly owed some amount of child support beginning with the date of separation, we are unable to determine whether the $900 per month award is appropriate because the court has not made findings of fact and conclusions of law in support of the award. Civil Rule 52(a).

It is also uncertain whether Alton was given credit for the amount he spent to support the children after the separation. Alton kept records which indicate that he gave Lee Ann $830 in cash, and spent several thousand dollars directly on the

children for food, clothes and medical care. He claims he is entitled to a setoff of between $8,640 and $14,400 against the retroactive award.[1] The trial court's order does not indicate how much, if any, of this was deducted from Alton's child support obligation.

Our decision in *Young v. Williams*, 583 P.2d 201 (Alaska 1978) does not preclude a reduction in Alton's obligations in this case. In *Young* we found that as a general rule

> when a defendant husband is required by a divorce decree to pay to the plaintiff money for the support of the children and the unpaid and accrued installments become judgments in favor of the plaintiff, he cannot, as a matter of law, claim credit on account of payments voluntarily made directly to the children....

*Id.* at 203 (quoting *Briggs v. Briggs*, 178 Or. 193, 165 P.2d 772, 777 (1946)). The *Young* rule does not apply where, as in the present case, no child support order exists and the parties have not independently reached a clear agreement as to custody and their respective support obligations.

On remand the trial court should specify whether and to what extent it credited Alton for his expenditures and, if it failed to do so, the court should adjust the retroactive award in such amount as it finds appropriate.

### II. *Interim Child Support Arrearages*

In its final decree, the trial court ordered Alton to pay Lee Ann $275 per month for interim child support arrearages which had accumulated from April 1, 1986 until the date of trial. The court found that Alton had not made any payments and that an arrearage existed in the amount of $26,100. To this, the court added $3,654 in prejudgment interest (12% per year) pursuant to

AS 47.23.025,[2] for a total child support arrearage of $29,754. The court then assessed postjudgment interest at 12% per year pursuant to AS 47.23.025. Alton challenges the interest assessments.

■ In *Morris v. Morris*, 724 P.2d 527, 530 (Alaska 1986), we held that prejudgment interest may be awarded in divorce proceedings. The recognized purposes of awarding prejudgment interest are to compensate the successful party for lost use of the money and prevent unjust enrichment of the unsuccessful party who had use of the money. *Id.* at 529–30. The decision whether to award prejudgment interest in a particular divorce action is within the discretion of the trial court. *Id.* at 530. We find that the trial court did not abuse its discretion by awarding it in this case.

■ The trial court, however, erred with respect to the rate of prejudgment interest. Alaska Statute 47.23.025 allows for 12% interest per year on "child support payments." In context, this is limited to payments under a support order for which the statute requires notice that "child support payments are 10 or more days overdue...." AS 25.27.020(a)(2)(C). Here the trial court awarded 12% interest on the entire amount, without distinguishing the portion of the award representing Alton's reimbursement for the debt he incurred by not paying his fair share of child support expenses following the separation but before entry of the interim award. *See Matthews v. Matthews*, 739 P.2d 1298 (Alaska 1987). The award for that period is not a child support payment within the meaning of AS 47.23.025, and 12% interest should not have been added to it. Instead, interest should have been assessed at 10.5% pursuant to AS 09.30.070.[3]

---

**1.** By "retroactive" we refer to the period between the date of separation, April 1, 1986, and the interim award, March 25, 1988. The award is reimbursement for the debt incurred by Alton when he did not pay his fair share of child care expenses after the parties separated. *Matthews v. Matthews*, 739 P.2d 1298 (Alaska 1987).

**2.** AS 47.23.025 was renumbered in 1990 and can now be found at AS 25.27.025. It cross-references AS 47.23.020(a)(2)(C) (now AS 25.27.-

020(a)(2)(C)) which provides for imposition of interest on arrearages for child support payments and AS 43.05.225 which specifies a rate of 12% per year.

**3.** AS 09.30.070 provides:

> The rate of interest on judgments and decrees for the payment of money is 10.5 percent a year....

The award of postjudgment interest should have been similarly split. Only arrearages accrued after the interim award can be considered "child support payments" and hence subject to 12% interest through AS 47.23.025. The arrearages based on the retroactive portion of the award should have been treated as a debt and subject to postjudgment interest at a rate of 10.5%.

### III. *Ongoing Child Support*

In addition to the $275 per month award for child support arrearages, the trial court ordered Alton to pay Lee Ann $1,100 per month in ongoing support until the older of their two children turns eighteen. At that time Alton's payments will be reduced to $815 per month until the younger child turns eighteen. The amounts were calculated using Civil Rule 90.3.

On appeal, Alton argued that the trial court erred by denying him an offset pursuant to the shared custody provisions of Rule 90.3(b) and (f). Rule 90.3(a) provides that when "one parent is awarded sole or primary physical custody" the child support award is computed as a percentage of the noncustodial spouse's "adjusted annual income." If the parents have shared physical custody, child support is calculated by making a determination using Rule 90.3(a) of what each parent would pay if the other parent had primary custody, multiplying this amount by the percentage of time the other parent will have physical custody of the children, and awarding the spouse with the lower resulting figure the difference. Rule 90.3(b). According to the version of Rule 90.3(f) in effect at relevant times, "[a] parent has shared or joint physical custody of children for purposes of this rule if the children reside with the parent for a specified period of at least 25% of the year." [4]

According to the visitation schedule, the children spend enough time with Alton to require a finding of shared custody. [5] On remand the court should calculate Alton's child support obligation pursuant to Rule 90.3(b).

Alton also alleged that the trial court miscalculated his adjusted annual income for Rule 90.3(a) purposes. The rule does not explicitly address how adjusted annual income should be calculated for a sole proprietor such as Alton. He argued that in determining his adjusted annual income, the court should have deducted the "legitimate business expenses" incorporated in his tax records, and payments of principal toward the purchase of a piece of business equipment (a grader). Lee Ann responded that tax write-offs frequently do not reflect economic reality and that allowing capital expenditures gives the obligor too much discretion with which to diminish a child support obligation.

The trial court rejected use of tax records and chose instead to start with gross receipts and deduct eight specific expenses: rent, utilities, equipment maintenance, income tax, social security, medical insurance, payments into a retirement plan, and debt servicing costs on equipment that existed at the time of separation. The court included as income $6,000 representing the rent Alton would have had to pay to live in one unit of a four-plex that he owned.

We find that the trial court erred in a number of respects regarding the calculation of Alton's income. First, it was a mistake to include as income the $6,000 the court estimated to be the imputed benefit to Alton of living in the four-plex. As owner of the property he should not be required, in effect, to pay to live there. Imputing rental income raises difficult val-

---

**4.** Commentary to the current version of Rule 90.3 indicates that residency is evaluated by counting the number of times the children spend the night with the parent. Rule 90.3 Commentary V. A.

**5.** Alton was awarded visitation as follows: every other weekend from Friday afternoon until Sunday evening; every Wednesday from 3:30 p.m.

to 8:00 p.m.; every other holiday (holidays include Thanksgiving, Christmas and spring break); two four-consecutive week periods each year; and Father's Day. Without holidays this comes to approximately 108 overnights which is clearly in excess of the 91 nights required (25% of 365 days) for a finding of shared custody.

uation problems. D. Posin, *Federal Income Taxation of Individuals*, p. 16 n. 17 (1983). It is not called for in Rule 90.3 nor is it suggested by the committee commentary to the rule. In unusual cases special circumstances may justify imputing rental income under the good cause exception set out in subparagraph (c) of the rule.[6]

▉▉▉ Furthermore, while we acknowledge the court's concerns regarding the accuracy of an income tax return as a reflection of true income, the technique the court employed did not allow sufficient recognition of appropriate business expenses. Although the committee commentary to Rule 90.3 states that there should be no deduction for accelerated depreciation, *see* Rule 90.3 Comment III. B., there is no similar suggestion with respect to straight-line depreciation of business equipment. Depreciation is a means of reflecting on an annual basis the costs of capital equipment. Such costs are real and should not be disregarded unless it appears that equipment was acquired in order to avoid or reduce the obligor's child support obligation. Unless that is the case here, on remand, the court should allow a realistic deduction for depreciation.[7]

## IV. *Property Division*

Alton alleged errors with respect to the trial court's division of the parties' property. His first contention is that the date for valuation of marital assets should not have been the date on which the parties ceased to function as a single economic unit, but, rather, the date of the divorce decree. His reasoning is that the spouse awarded the property, in this case a four-plex co-owned by Lee Ann and Alton, should not have to bear the entire loss caused by falling real estate prices. Because the four-plex was worth more in April 1986, the date the court determined the economic entity to

have been severed, than in December 1988, the date of the divorce, Alton had to cash Lee Ann out at a higher value.

▉▉▉ We have not previously expressed a general preference between date of separation and date of trial for valuation of property. Ordinarily, however, the date of valuation, which may be distinct from the date employed to distinguish marital from post-marital property,[8] should be as close as practicable to the date of trial. The choice of the later date is well supported by authority from other jurisdictions and advances the interests of accuracy and fairness. *See* L. Golden, *Equitable Distribution of Property* § 7.01 at 207 (1983); Cohen & Hennessey, *Valuation of Property in Marital Dissolution*, 23 Fam.L.Q. 339, 344–45 (1989). As Mr. Golden explains:

> A valuation date should be chosen which will provide the most current and accurate information possible and which avoids inequitable results. It is distinct from the date marking the termination point for inclusion of property within equitable distribution. The latter date marks the end of the marital *team* effort. Since this date may be well in advance of the dissolution proceedings, a valuation date linked to it may result in stale financial information.

L. Golden, *supra*, at § 7.01 (citations and footnotes omitted).

In *Nelson v. Nelson*, 736 P.2d 1145, 1147 (Alaska 1987), we held that when "the parties had not co-mingled their financial affairs since their separation[, t]he separation was ... a convenient and appropriate time at which to value the marital property for division." In so stating we misused the word "value," for there was no issue of valuation in *Nelson*. A more appropriate word would have been "determine." The question in *Nelson* was whether some $17,-000 which the parties had on the date of

---

**6.** One such case would be where an obligor parent has reduced his or her income by liquidating income-producing assets and applying the proceeds to the mortgage on his or her dwelling.

**7.** Alton's argument that he should be able to deduct depreciation expenses and principal pay-

ments on a grader would give him a double deduction and thus lacks merit.

**8.** *Hunt v. Hunt,* 698 P.2d 1168 (Alaska 1985), is an example of a case where a separation date was properly used to distinguish marital from post-marital property.

separation and which Mrs. Nelson subsequently spent before the trial should have been counted as part of the property division made to her. The trial court so concluded, and we affirmed.

In *Lang v. Lang*, 741 P.2d 1193, 1196 n. 8 (Alaska 1987), we directed that valuation take place as of the date of separation. Again, as in *Nelson*, the parties raised no issue as to valuation. The question was whether property acquired by Mrs. Lang after the separation should have been subject to division in the divorce. To the extent that our directive in *Lang* was intended to fix the valuation date rather than the date for determination of what property should be divided it seems difficult to justify unless, as Mrs. Lang claimed, the increase in value was due to her effort. Otherwise, there was no reason why the assets of the parties should be given dated and inaccurate values.

As noted, there may be special situations in which the date of separation is more appropriate. Where, for example, "one of the spouses dissipates assets or deliberately allows their value to decline following separation, or the value of marital property increases due to the efforts of one of the spouses," use of the separation date may be warranted. L. Golden, *Equitable Distribution of Property* § 7.02 at 208 (1983). In that event, there should be specific findings as to why the date of separation is the more appropriate choice for valuation. On remand, the court should value the marital property as of the time of the divorce decree unless it specifically finds that a special situation necessitating a different valuation date has been established.

Alton also argued that the trial court's valuation of the grader was inaccurate. The trial court based its decision on appraisal testimony as to the fair market value for that machine. Consequently, we find no abuse of discretion in its finding.

## V. *Attorney's Fees*

Alton alleged that the trial court erred in awarding Lee Ann $2,500 in interim attorney's fees. The award, however, was omitted from the judgment, and so the claim is moot.

The judgment is VACATED and the case REMANDED to the superior court for further proceedings as required herein.