**Douglas MOFFITT, Appellant,**

v.

**Marsha MOFFITT, Appellee.**

No. S–3683.

Supreme Court of Alaska.

June 21, 1991.

Rehearing Denied July 18, 1991.

Lee Holen, Law Offices of Lee Holen, Anchorage, for appellant.

M. Ashley Dickerson, M. Ashley Dickerson, Inc., Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

The primary question raised by Douglas Moffitt in this appeal concerns the superior court's finding that Moffitt Contracting, Inc., the business enterprise which was at one time co-owned and operated by Douglas and Marsha Moffitt, has marketable goodwill in the amount of $210,000. Douglas argues that the court's finding overstates the firm's goodwill. Moreover, he claims that, to the extent any goodwill exists, it is unmarketable. Douglas also argues that the trial court erred in limiting evidence of the business' income to pre-divorce data and in excluding certain exhibits from trial. Lastly, Douglas contends that the court abused its discretion in awarding $5000 attorney's fees to Marsha.

We reverse and remand for a new calculation of the business' goodwill, and vacate the award of attorney's fees.

## I.

The dispute surrounding Douglas and Marsha Moffitt's divorce and property division first came to this court in *Moffitt v. Moffitt* (*Moffitt I*), 749 P.2d 343 (Alaska 1988).[1] In that case, we remanded to the superior court the question whether Moffitt Contracting possesses any business goodwill. If so, the court was to decide whether that goodwill is marketable and therefore subject to division in the divorce proceedings. *Id.*

On remand, the trial court adopted the valuation of Marsha's expert and found that the business has goodwill in the amount of $210,000. In assessing this goodwill, the court found that the appropriate time at which to measure both the value and the marketability of goodwill was April 1985, the date of the original

---

1. The facts underlying this dispute were fully set forth in *Moffitt I* and need not be repeated here.

divorce trial. It therefore excluded all evidence of the business' value and marketability after that time. Over Douglas' objection, it also excluded from evidence exhibits which Douglas stated would support his final argument. The court concluded that Moffitt Contracting's goodwill was freely marketable. Lastly, it awarded Marsha $5000 in attorney's fees because it found that Douglas' recalcitrance in the discovery process had increased litigation costs.

Douglas appeals.

## II.

Alaska law provides that the goodwill of a close corporation is property which may be included in the marital estate in a divorce proceeding. *Hunt v. Hunt,* 698 P.2d 1168 (Alaska 1985). The calculation of Moffitt Contracting's goodwill presents a question of fact.[2] In reviewing the trial court's factual determination, we will set aside its ruling only upon finding clear error. Alaska R.Civ.Proc. 52(a); *Moffitt I,* 749 P.2d at 346.

## III.

Douglas argues the trial court clearly erred in finding that the business has goodwill of $210,000. He contends that Marsha's expert, Kirk Brown, made several improper assumptions in applying the IRS "excess earnings" method to calculate goodwill, thus skewing the outcome in Marsha's favor.[3] Specifically, Douglas claims that Brown failed to make any allowance for depreciation of the firm's assets in determining its earnings. He also argues that Brown attributed an arbitrarily low salary to him and erroneously failed to attribute any income to Marsha for her contribution to the operation of the business. We find merit in all of these contentions.

We find clear error in Brown's, and therefore the superior court's, failure to make any depreciation adjustment of the firm's assets. While we agree with the court's conclusion that accelerated depreciation may not be "a valid indication of how much the total sum of the company's equipment was consumed in the course of producing the [company's] income stream," we believe that the court should make some allowance for the depreciation of the equipment. We recently stated this conclusion in *Ogard v. Ogard,* 808 P.2d 815 (Alaska 1991). At issue in *Ogard* was the trial court's calculation of an individual's income for purposes of determining that person's child support obligation under Civil Rule 90.3. In evaluating the individual's business income, we recognized that "[d]epreciation is a means of reflecting on an annual basis the costs of capital equipment. Such costs are real and should not be disregarded unless it appears that equipment was acquired in order to avoid or reduce the obligor's child support obligation." *Id.* at 819.

A similar rule applies in calculating a business' income for purposes of a divorce proceeding. The court must allow a reasonable deduction for depreciation of business equipment unless it has cause to believe that equipment has been acquired for the purpose of artificially reducing the business' income, thereby artificially reducing the value of the marital estate. The court's failure to allow for such a deduction in this case resulted in an overstatement of the value of Moffitt Contracting's assets.[4]

---

**2.** The parties agree that "goodwill" can be defined as an expectation of earnings in excess of a fair return on the capital invested in tangibles or other means of production. Rev.Rul. 59–60, 1959–1 C.B. 237.

**3.** Both parties have applied the "excess earnings method" of calculating goodwill. This method is one of the five accepted approaches set forth in *Moffitt I,* 749 P.2d at 347–48. Under this approach, goodwill is calculated by capitalizing "excess earnings." Excess earnings are earnings which remain after earnings on tangible assets and owner's compensation for services are deducted from total earnings. *See id.* at 348.

**4.** When reevaluating the business' equipment on remand, the trial court should ascertain whether the equipment awarded to Marsha in the divorce decree has been separated from the firm's remaining assets. The record is unclear whether this had been done before the court made its previous goodwill determination.

■ We also find merit in Douglas' claim that Brown overstated the firm's goodwill by failing to subtract a sufficient salary allowance for both his and Marsha's contributions to the business. In his calculations, Brown attributed to Douglas a salary of $36,000 per year. He estimated that Douglas earned $6000 per month over a six month working year. Admittedly, this $6000 figure was selected solely on the basis of what Brown considered to be a "reasonable" salary, and Marsha had stated that Douglas worked only six months of the year. Brown made no adjustment in his calculations for Marsha's contribution to the business.[5]

Douglas claims that Brown's arbitrary selection of a $6000 monthly salary was clear error. We agree that Brown selected this amount somewhat arbitrarily. By our calculation, however, this monthly salary exceeds the salary figure which Douglas suggests more accurately approximates his income.[6] We therefore find any error in the adoption of a $6000 monthly salary harmless. Rather than disputing Brown's approximation of his monthly salary, the focus of Douglas' argument appears to be that Brown underestimated the number of months he worked each year.

On this issue, we agree that the trial court clearly erred in accepting Brown's selection of a six month working year to calculate Douglas' salary. Although the record is unclear as to the precise number of months Douglas worked each year, we believe Douglas presented evidence which indicates that his working year exceeded six months. Douglas contends that he worked 1200 to 1600 hours during the year ending April 1984. Assuming he worked a 40-hour week, Douglas' working year would have ranged from 7½ to 10 months long in that year. While we do not find Douglas' representations as to his actual working year conclusive,[7] his contentions are sufficient to convince us that the trial court's arbitrary adoption of a six month working year was erroneous.[8]

We also find plain error in the failure to attribute a reasonable income to Marsha for the value of her contribution to the business enterprise.[9] Douglas has aptly noted the irrelevancy of the parties' practice of not paying themselves a salary. An objective prospective purchaser of the firm would conclude that Marsha's contributions to the business had value, the cost of which should be reflected in the computation of the firm's income.[10]

5. Marsha contends that the parties never intended that she receive compensation for her efforts. Rather, she claims their intent was that she would be supported by Douglas' earnings.

6. Douglas argues that, under the pay scale established by the State of Alaska, his 1984 salary would have been $43,358 for the roughly 1400 hours he worked in that year. His hourly wage for this period therefore would have been $30.97. Given that there are 4.3 weeks per month and assuming Douglas worked a 40-hour week, Douglas' monthly salary would be approximately $5326.84 at this wage.

7. In fact, we reject his claim that it is possible to estimate the number of hours he worked in years other than 1984 by comparing the firm's income in those other years to the income and number of hours worked in the 1984 tax year. Douglas attempts to use the firm's 1984 income and the roughly 1400 hours worked in that year as a base; he then claims that, in other years where the firm's income exceeded his 1984 income, he must necessarily have worked more hours. We find this argument unpersuasive in light of the numerous variables inherent in a small contracting business. There are many events which could have significantly altered

the firm's income in a given year without regard to the number of hours Douglas labored in that year.

8. However, we recognize that on remand, the parties may not be able to produce more reliable information concerning the duration of Douglas' working year. In such a case, we believe the trial court would be justified in accepting a figure within the 7½ to 10 month range for purposes of calculating Douglas' annual salary.

9. The record shows that Marsha performed a wide variety of services for the business, ranging from truck driving to bookkeeping.

10. Douglas has additionally claimed that Kirk Brown improperly adjusted the firm's income to include certain expenses which had been deducted as business costs on the parties' 1981–84 tax returns, but which Marsha later claimed were actually personal expenses. Brown's basis for this adjustment is Marsha's "best estimate" of the amount of personal expenses which were improperly deducted on the returns.

In the original divorce trial, Marsha testified that she and Douglas improperly deducted cer-

For the reasons set forth above, the trial court's adoption of Kirk Brown's goodwill valuation is clearly erroneous to the extent it failed to account for a reasonable depreciation of the business' assets, arbitrarily assigned an income to Douglas and failed to attribute any income to Marsha. We therefore reverse and remand to the trial court for a new calculation of the firm's goodwill.

## IV.

Douglas argues that the trial court erred by limiting the admission of evidence regarding the value and marketability of Moffitt Contracting to evidence available at the time of the parties' divorce trial in April 1985. He contends that, since the post-divorce value and marketability of the business is at issue, the court should have evaluated available post-divorce evidence on this question.

In *Ogard v. Ogard*, 808 P.2d 815 (Alaska 1991), we considered whether the date of separation or the date of trial is the more appropriate time to value property for purposes of equitable distribution in a divorce proceeding. We concluded that, in general, the time of trial provides "the most current and accurate information possible and ... avoids inequitable results" regarding the valuation and later distribution of marital property. *Id.* at 819.

We also acknowledged that in certain special situations the date of separation may be the preferable time at which to value marital property. One such special situation exists if one spouse "dissipates assets or deliberately allows their value to decline following separation, or the value of marital property increases due to the efforts of one of the spouses." *Id.* at 820. In such a case, however, the trial court should make specific findings justifying its use of the date of separation rather than the date of trial.

■ In this case, the choice is not between the date of separation and a later date of trial as in *Ogard* but between the date of divorce and a later trial to value certain marital property. Nonetheless, we believe the same considerations discussed in *Ogard* apply to the present decision. That is, in general, the later date best "advances the interests of accuracy and fairness." *Id.* at 819. The trial court should therefore evaluate any evidence concerning the value and marketability of Moffitt Contracting which is available at the time of the trial on remand unless some specific circumstance justifies limiting the evidence to that available on the date of divorce.

In addition, there is another consideration which is not present when the question is only whether the date of separation or date of trial should be used as the date for valuation of marital assets; that is, whether the date of valuation should be the date of the original trial or the date of the new trial on remand. The consideration is that of judicial efficiency. In some circumstances, it might be unjust to revalue only one asset at the date of the new trial while maintaining old values on all other assets which have been distributed. If so, judicial efficiency might require that valuation take place as of the date of the original trial.

Because the record is silent as to any special circumstances which might justify the court's decision to limit the evidence regarding the firm's value to pre-divorce data, we reverse the court's ruling, and we remand this question to the trial court for further proceedings consistent with our position in *Ogard*, and the remarks we have made herein.

## V.

Because the trial court must recalculate the firm's goodwill, we need not address the other issues which Douglas raises in this appeal. We do note, however, that the trial court awarded Marsha $5000 in attorney's fees due to Douglas' "recalcitrance in providing documentation" which the court

---

tain personal expenses as business costs. For this reason, even though Marsha's estimates regarding the amount of improper deductions are somewhat speculative, there appears to be some

basis for reliance on them. Kirk Brown's incorporation of these figures in his calculations, and the trial court's later acceptance of them, therefore, is not clearly erroneous.

found substantially and directly increased Marsha's attorney's fees in the case on remand.

 In divorce proceedings, attorney's fee awards are not to be based on the prevailing party concept but on the relative economic situations and earning powers of the parties. *Burrell v. Burrell,* 537 P.2d 1 (Alaska 1975). However, vexatious conduct by one party which leads to increased attorney's fees will justify a fee award to the burdened spouse. *Horton v. Hansen,* 722 P.2d 211 (Alaska 1986). Such awards of attorney's fees rest within the broad discretion of the trial court. They will not be disturbed on appeal unless "arbitrary, capricious, manifestly unreasonable, or stem[ming] from an improper motive." *Lone Wolf v. Lone Wolf,* 741 P.2d 1187, 1192 (Alaska 1987).

We have recently explained that "one party's misconduct does not authorize the court to disregard the relative economic situations and earning powers of the parties.... [I]n making an increased fee award, the court must first determine what fee award would be appropriate under the general rule, and only then increase the award to account for a party's misconduct. Failure to follow this two-step process constitutes an abuse of discretion." *Kowalski v. Kowalski,* 806 P.2d 1368, 1373 (Alaska 1991) (footnote omitted).

Our review of the record discloses no evidence which supports the trial court's fee award. The relative economic situations of the parties in this case provides no basis for an award of fees to Marsha. The marital estate has been equitably divided; Marsha should now be capable of paying her own legal fees. We also see no evidence that Douglas acted vexatiously during the course of the suit on remand.[11] However, even if his conduct was improper, the trial court has failed to "make explicit findings of bad faith or vexatious conduct and clearly explain its reasons for deviating from the general rule[ ]" as re-

quired by the *Kowalski* decision. *Id.* at 1373 (citation omitted).

## VI.

For the reasons discussed above, we find the award of attorney's fees to Marsha was improper and vacate that award. We also reverse the trial court's calculation of Moffitt Contracting's goodwill and remand for a new determination of this figure.

REVERSED and REMANDED.

---

**11.** The attorney's fees in question relate only to the proceedings in connection with our initial remand of this case. Therefore, only Douglas' conduct in the course of the suit on remand is relevant here.