*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PATRICIA A. BEALS, | ) | |
| | ) | Supreme Court No. S-14688 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-08-12700 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MARK L. BEALS, | ) | |
| | ) | No. 6789 – June 28, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Jacob A. Sonneborn, Ashburn & Mason, P.C., Anchorage, for Appellant. Shana Theiler, Walton, Theiler & Winegarden, LLC, Kenai, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

I.      INTRODUCTION

Patricia Beals challenges the superior court's property division in a divorce case. Patricia argues that the superior court incorrectly characterized as separate property a lot that she and her former husband, Mark Beals, jointly purchased with cash obtained from refinancing their marital home, which Mark had owned before their marriage. Patricia also contends that the superior court erroneously valued the mortgage on their

marital home as of the time of separation rather than the time of trial. Because the entire value of the jointly titled lot should have been characterized as marital property and because the home equity should have been valued as of the time of trial, we reverse.

## II.    FACTS AND PROCEEDINGS

Patricia and Mark Beals married in November 2000 and permanently separated in November 2008. They divorced in 2011. Mark had children from a previous relationship, and together Mark and Patricia had two children.[1] The superior court issued its findings of fact and conclusions of law concerning the division of property in February 2012.[2] Patricia filed a motion to reconsider, which the superior court denied. This appeal followed.

### A.    The 534 Second Avenue Home And 528 Second Avenue Lot

When Patricia and Mark married, Mark already owned a house at 534 Second Avenue in Seward. They lived there together for their first six years of marriage. In 2001, about one year after their marriage, Mark and Patricia refinanced the 534 Second Avenue home and placed the title and mortgage in both of their names. From the refinancing, they converted $42,092 of equity to cash. They used this cash to buy the adjacent lot at 528 Second Avenue, again placing the title in both of their names.

After the refinance, both Patricia and Mark contributed to the mortgage payments for their 534 Second Avenue home. Until 2006, when they bought another home, Patricia and Mark continued to live in the house at 534 Second Avenue. The parties agree that the 534 Second Avenue residence transmuted into marital property.

---

[1]    No custody or support issues are raised on appeal.

[2]    The superior court bifurcated the divorce and property division. The divorce decree became effective on November 17, 2011. The superior court held a trial for the division of the marital estate in January 2012 and decided the final property division in February 2012.

Patricia filed for divorce in 2008. Trial was held on November 9 and 17, 2011 and January 19, 2012 before Superior Court Judge Eric A. Aarseth. Patricia was represented by counsel and Mark represented himself.

At trial, Mark testified about refinancing the marital home and described the parties' "conscious decision" to use the cash they received from the financing "to jointly . . . purchase the [adjacent] Second Avenue [lot]." He also explained that "we wanted the piece of property next door" and "[w]e used the equity [from the home] to buy this Second Avenue lot."

In February 2012 the superior court issued a decision dividing the marital property equally and ordering Mark to pay an equalization payment of $80,172.17.[3] The superior court found that "Mark came to the marriage with assets and Patty came to the marriage with debt." "[B]ased on the comparison of their incomes, retirements and non-marital assets," the superior court also found that "both parties were equally situated" at the end of the marriage. Accordingly, the superior court decided their situation warranted the presumed even distribution of the marital estate.[4]

Patricia argued at trial that the proceeds from the refinance of the marital home at 534 Second Avenue were marital. The superior court, however, concluded that these proceeds were Mark's separate property, reasoning that most of the Second Avenue

---

[3] In the superior court's decision, the equalization payment is $80,172.17, but the spreadsheet attached to the decision lists the payment as $82,497.17.

[4] *See* AS 25.24.160(a)(4); *Green v. Green*, 29 P.3d 854, 860 (Alaska 2001) ("An equal division of the marital property is presumptively valid." (citing *Brooks v. Brooks*, 733 P.2d 1044, 1058 (Alaska 1987))); *Sampson v. Sampson*, 14 P.3d 272, 277 (Alaska 2000) ("An equal division of the marital property is presumed to be equitable." (citing *Nicholson v. Wolfe*, 974 P.2d 417, 422 (Alaska 1999))).

home remained separate property because Patricia and Mark had only lived there for one year before they refinanced. The superior court further reasoned:

> Mark had approximately $71,000 in equity in the 534 2nd Avenue residence in November 2001 when he, along with Patty refinanced the home to convert a portion of that equity into cash. The parties married in November 2000 therefore a small portion of that $71,000 was likely marital as some small portion [o]f the mortgage had been paid with marital funds. . . . [T]he unpaid balance changed by $2079 over a six month period of time. That represents a growth rate in equity of approximately $346.50 per month. At the time of the refinance, the Beals[es] had been married 12 months, therefore approximately $4158 (346.50 x 12) of the $71,000 was marital equity leaving the remaining $66,842 as non-marital equity.

> The Beals[es] converted $42,092 of the equity into cash . . . . The remaining equity remained in the home which was the marital house and now financed by a marital debt (the new mortgage was the joint responsibility of the Beals[es]).

The superior court decided that "Mark is entitled to claim the $42,092 [from the refinance of the home] as a non-marital asset as it can easily be tracked and separated from the marital assets." Because marital debt financed the new mortgage, the superior court treated the remaining equity in the home as marital. Thus, while recognizing that the 534 Second Avenue home had become marital property, the superior court viewed the equity from that home that was invested in the 528 Second Avenue lot as Mark's separate asset. The superior court ultimately valued the lot at $45,000, treating $42,092 of the lot as Mark's separate property, and the remaining $2,908 as marital property.

Patricia moved for reconsideration. In its order denying reconsideration, the superior court reasoned that "[t]he pre-marital equity in the 534 2nd Ave[nue home]

was readily identifiable and separable from the marital estate. There was no need to treat it any differently than if the funds were in a pre-marital IRA."

### B.    The Orlander Avenue Home

In 2006 Patricia and Mark sold the 534 Second Avenue home and used the revenue to buy a new house at 33946 Orlander Avenue together. After taking the mortgage and title to the Orlander home in both of their names, they lived together and raised their children there for about two years. The parties acknowledge that the Orlander home is part of the marital estate. On appeal, the parties dispute whether the superior court erred by valuing the home at the time of separation instead of the time of trial.

After Mark and Patricia separated, the Orlander home was appraised at $280,000[5] and the mortgage loan amount was $193,768. During the three years between the date of separation and trial, Mark lived in the home and paid monthly mortgage payments of around $2,100. Patricia testified that Mark excluded her from the Orlander home and she rented a separate residence during these three years. By November 2011, the time of trial, the home's mortgage had decreased from $193,768 to $156,651.50 due to Mark's payments.

At trial, Patricia asked the court to determine the net equity of the Orlander home by valuing the amount of the mortgage loan at the time of trial, not the time of separation. The superior court declined to adopt this approach, reasoning: "[Mark] used post-separation income to create equity and should be able to benefit from that investment. Further, the market is flat so he will not enjoy any windfall due to a rise in value that is not accounted for in the final tally."

---

[5]    Relying on this 2009 appraisal and testimony about the need for home repairs, the superior court estimated the home value at $270,000.

In her motion for reconsideration, Patricia argued that the superior court improperly valued the Orlander home at the time of separation. The superior court denied that motion, stating that "[a]fter separation, Ms. Beals could have purchased a home and paid toward equity and not rent." Reasoning that "[t]he value of the home at separation and at trial are the same" the superior court concluded that "[t]he only change in the value was the mortgage and that was paid with post-separation income."

On appeal, Patricia challenges the classification of the 528 Second Avenue lot as separate property and the home mortgage valuation.

## III. STANDARD OF REVIEW

There are three basic steps in the equitable division of marital assets: (1) deciding what specific property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably.[6] This appeal involves the first two steps.

We take this opportunity to clarify the correct standard of review for characterizing property as either marital or separate.[7] In the first step, "[t]he

---

[6]   *See Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991) (citing *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988)); *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983).

[7]   Our past decisions involving the first step in the equitable division of property have described inconsistently the correct standard of review. *Compare Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006) ("The characterization of property as separate or marital may involve both legal and factual questions." (citing *Martin v. Martin*, 52 P.3d 724, 726 (Alaska 2002))), *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994) (same), *and Moffitt*, 749 P.2d at 346 ("Step one — determining what property is available for distribution — is reviewed under the abuse of discretion standard, although it may involve legal determinations to which this court applies its independent judgment." (citing *Wanberg*, 664 P.2d at 570)), *with Carr v. Carr*, 152 P.3d 450, 454 (Alaska 2007) ("We review a trial court's decision to classify property as marital only for abuse of
(continued...)

characterization of property as separate or marital may involve both legal and factual questions."[8]  Underlying factual findings as to the parties' intent, actions, and contributions to the marital estate are factual questions.[9] "Findings of fact are reviewed for clear error, but whether the trial court applied the correct legal rule in exercising its discretion is a question of law that we review de novo using our independent judgment."[10] The second step, valuation of assets, is a factual determination that we review for clear error.[11]  We review the trial court's third step, the equitable allocation of property, for an abuse of discretion.[12]

"Additionally, the trial court must render findings of ultimate fact that support any decreed property division; the findings must be explicit and sufficiently detailed to give this court a clear understanding of the basis of the trial court's

---

[7](...continued)
discretion; and we review the court's underlying factual findings only for clear error." (citations omitted)), *Krize v. Krize*, 145 P.3d 481, 484 (Alaska 2006) (reviewing the characterization of property under the abuse of discretion standard), *and Sampson*, 14 P.3d at 275 ("Property divisions require a three-step process . . . .  These steps are reviewed under the abuse of discretion standard . . . ." (citations omitted)).

[8]      *Odom*, 141 P.3d at 330 (citing *Martin*, 52 P.3d at 726); *see also Cox*, 882 P.2d at 913; *Moffitt*, 749 P.2d at 346 (citing *Wanberg*, 664 P.2d at 570).

[9]      *See Odom*, 141 P.3d at 330 (citing *Martin*, 52 P.3d at 726); *Doyle*, 815 P.2d at 368 (citing *Moffitt*, 749 P.2d at 346).

[10]      *Hanson v. Hanson*, 125 P.3d 299, 304 (Alaska 2005) (quoting *Schmitz v. Schmitz*, 88 P.3d 1116, 1122 (Alaska 2004)); *see also Odom*, 141 P.3d at 330 (citing *Martin*, 52 P.3d at 726); *Doyle*, 815 P.2d at 368 (citing *Moffitt*, 749 P.2d at 346).

[11]      *See Doyle*, 815 P.2d at 368; *Rodriguez v. Rodriguez*, 908 P.2d 1007, 1012 n.6 (Alaska 1995) (citing *Thomas v. Thomas*, 815 P.2d 374, 375 (Alaska 1991)).

[12]      *See Doyle*, 815 P.2d at 368 (citing *Moffitt*, 749 P.2d at 346).

decision."[13] Whether a superior court's findings are sufficiently clear is a legal question, which we review de novo.[14]

## IV.  DISCUSSION

### A.  The Characterization Of The 528 Second Avenue Lot Was Incorrect.

The superior court's characterization of property owned by the parties to a divorce as marital or separate is the first step in the equitable division of property.[15] Here, the superior court characterized $42,092 of the $45,000 value of the 528 Second Avenue lot as Mark's separate property because the assets used to buy the lot "can easily be tracked and separated from the marital assets."

Patricia appeals that determination and argues that the equity in the marital home at 534 Second Avenue transmuted entirely into marital property.  Accordingly, she claims, the superior court should have determined that the $42,092 from refinancing the marital home was also marital property.  In addition, she points out that Mark did not overcome the presumption that jointly held property is marital because "there is no evidence that Mark ever intended to keep this property separate."  We agree that it was error to treat the jointly held lot as separate property.

The superior court found that "the intent of the parties was to treat 534 2nd Avenue as the marital home along with the equity and debt as part of the marital estate" and that Mark and Patricia "refinanced their home to convert a portion of that equity into cash."  The superior court's decision that the home was marital property is supported by the factual record and is consistent with our case law holding that "[f]actors relevant in determining the parties' intent regarding real property include: '(1) the use of property

---

[13]     *Id.* (citations omitted).

[14]     *Miller v. Miller*, 105 P.3d 1136, 1140 (Alaska 2005) (footnote omitted).

[15]     *Odom*, 141 P.3d at 332.

as the parties' personal residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing title in joint ownership; and (4) using the credit of the non-titled owner to improve the property.' "[16] Patricia and Mark lived in the home as their family residence. Patricia claims that they jointly managed the home. Finally, after residing there together for one year, they placed the title in joint ownership and used Patricia's credit in the refinancing. As a result, the superior court correctly concluded that the Second Avenue home had transmuted into marital property.

"Transmutation occurs when married parties intend to make a spouse's separate property marital and their conduct during marriage demonstrates that intent."[17] An owner's intent may be illustrated through words and actions.[18] And once transmutation occurs, an asset is converted "entirely from separate to marital."[19] As the

---

[16] *Hanson v. Hanson*, 125 P.3d 299, 307 (Alaska 2005) (quoting *Green v. Green*, 29 P.3d 854, 858 (Alaska 2001)); *see Matson v. Lewis*, 755 P.2d 1126, 1128 (Alaska 1988) (affirming decision to treat jointly held parcels as marital property even though the wife had paid the down payment with her premarital assets); *Carlson v. Carlson*, 722 P.2d 222, 224-25 (Alaska 1986) (treating a four-plex as marital property even though the husband paid the down payment with his separate property because the parties had demonstrated an intent to jointly hold the building); *see also Lewis v. Lewis*, 785 P.2d 550, 555 (Alaska 1990) (holding that jointly held stocks acquired with premarital assets were marital property when there was no evidence that the husband intended to keep the shares as his separate property).

[17] *Odom*, 141 P.3d at 332 (quoting *Harrower v. Harrower*, 71 P.3d 854, 857 (Alaska 2003)) (internal quotation marks omitted).

[18] *Hansen v. Hansen*, 119 P.3d 1005, 1013 (Alaska 2005) (citing *Green*, 29 P.3d at 857).

[19] *Miller*, 105 P.3d at 1141 (citing *Harrower*, 71 P.3d at 857-58); *see also Heustess v. Kelley-Heustess*, 158 P.3d 827, 831 (Alaska 2007) ("We have repeatedly indicated that transmutation of real estate converts the entire property from separate to marital in character.").

superior court correctly concluded, Mark and Patricia's Second Avenue home transmuted into marital property. Thus, when the parties refinanced their home, which was a marital asset, the funds that they received from the refinance were in turn marital funds.

Moreover, Patricia and Mark used the marital funds that they received from the refinance to buy a lot that was titled in both of their names. We have held that "placing separate property in joint ownership is rebuttable evidence that the owner intended the property to be marital."[20]

Generally, "all assets acquired by the parties during their marriage are marital property" except for gifts and inheritances.[21] Our rule is supported by authority from other jurisdictions: "The joint title gift presumption is presently recognized in a majority of American jurisdictions."[22] And "[w]here this presumption applies, property transferred into joint title is presumed to be a gift to the marital estate, and the burden of proof is on the party who seeks to show that a gift was not intended."[23] Here, Mark failed to rebut this presumption because Mark presented no evidence of an intent to keep

---

[20] *Schmitz v. Schmitz*, 88 P.3d 1116, 1128 (Alaska 2004) (citations omitted); *Chotiner v. Chotiner*, 829 P.2d 829, 833 (Alaska 1992) (citing *Lewis*, 785 P.2d at 555); *see also Miller*, 105 P.3d at 1142 ("There is a strong presumption that placing separate property into a joint account demonstrates an intent to treat the property as marital." (citing *Brown v. Brown*, 947 P.2d 307, 311 (Alaska 1997))); *Johns v. Johns*, 945 P.2d 1222, 1225 (Alaska 1997) (jointly held fishing boat was marital property despite husband's contributions of premarital assets to the boat purchase).

[21] *Johns*, 945 P.2d at 1225 (citing *Lundquist v. Lundquist*, 923 P.2d 42, 47 (Alaska 1996)).

[22] 1 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5:43, at 476 (3d ed. 2005) (footnote omitted).

[23] *Id.*

the property separate. Therefore, it was error to treat $42,092 of the jointly titled lot, which the parties acquired during marriage, as Mark's separate property.

Mark points out that the superior court found that he "was entitled to claim the $42,092 as a non-marital asset as it could easily be tracked and separated from the marital assets." Tracing the source of assets may be appropriate in unusual cases such as when the marriage is of short-term duration and the spouses did not commingle their assets.[24] In *Rose v. Rose*, we stated that "in marriages of short duration, where there has been no significant commingling of assets between the parties," the superior court may trace the parties' assets and place the parties in the financial position they would have been without the marriage.[25]

But tracing the source of the asset was not appropriate in this case. There is a clear presumption that jointly held assets are marital, and tracing can only take place "[i]f evidence is presented that is sufficient to overcome this presumption."[26] Here the parties were married for eight years before separation. And not only did they commingle their assets, they also placed the lot in question in both of their names after using a marital asset to purchase it. Because the entire marital home transmuted to marital property, and because Mark failed to rebut the presumption that the jointly titled lot was marital, we conclude it was error to treat most of the lot's value as Mark's separate property.

---

[24]     *See Rose v. Rose*, 755 P.2d 1121, 1125 (Alaska 1988) (affirming the superior court's tracing of assets in property division after 18-month marriage during which parties did not commingle their assets).

[25]     *Id.*

[26]     *Schmitz*, 88 P.3d at 1128.

According to Mark, even if the superior court erred, any error was harmless because "the ultimate result . . . fulfills the lower court's obligation to fairly allocate the economic effect of divorce, and Patty has made no showing to the contrary." But Mark's harmless error argument has little merit. The superior court expressly found that an even distribution was just under the circumstances because the parties' "financial standing[s] both currently and prospectively are relatively equal." Once the superior court found that the home was marital property and that an even distribution was appropriate, mischaracterization of the lot cannot be framed as a proper unequal distribution of property.

Because Patricia and Mark refinanced and jointly titled their marital home, cash proceeds of the refinance were also marital property. Patricia and Mark then used these marital proceeds to buy a lot, which was itself jointly titled. There was no evidence of intent to maintain the property as separate, so the lot was a marital asset. We therefore conclude that it was error to treat the $42,092 of the 528 Second Avenue lot as Mark's separate property.

## B. The Orlander Avenue Home's Equity Was Incorrectly Valued.

### 1. It was error to value the Orlander Avenue home at the time of separation.

Patricia argues that the trial court incorrectly determined the parties' equity in the Orlander Avenue home because it should have valued the mortgage on the home at the time of trial rather than the time of separation. Property valuation is the second step in the equitable division of property.[27] In valuing the mortgage debt remaining on the Orlander Avenue marital home at the time of separation, rather than trial, the superior court reasoned that Mark "used post-separation income to create equity and should be

---

[27] *E.g.*, *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983).

able to benefit from the investment." The superior court also explained that "the market is flat so he will not enjoy any windfall due to a rise in value that is not accounted for in the final tally." On reconsideration, the superior court further reasoned that Patricia "could have purchased a home and paid toward equity and not rent." Patricia appeals, arguing that the superior court should have valued the home mortgage at the time of trial, rather than at the time of separation. We agree with Patricia because valuation at the time of trial provides the most accurate information.[28]

Alaska Statute 25.24.160(a)(4)(I) directs the superior court to consider, among other factors, "the value of the property at the time of division."[29] We made clear in *Ogard v. Ogard* that the date on which the superior court values marital property generally "should be as close as practicable to the date of trial."[30] Valuing property at the time of trial uses the most current and accurate information, thereby avoiding unfair results.[31] But "[i]n special situations, the trial court may value property as of the date of

---

[28]     *See Ogard v. Ogard*, 808 P.2d 815, 819 (Alaska 1991) (concluding that valuation at the time of trial, the end of the joint marital effort, provides the most current and accurate information).

[29]     AS 25.24.160(a)(4)(I); *see also Lewis v. Lewis*, 785 P.2d 550, 555 (Alaska 1990) (holding that shares of jointly held stock were marital even though husband acquired stock with his premarital assets); *cf. Laing v. Laing*, 741 P.2d 649, 656 (Alaska 1987) (treating both vested and nonvested pensions as marital property); *Wanberg*, 664 P.2d at 573-74 (treating entire equitable value of townhouse bought after marriage as subject to equitable distribution rather than just appreciated value).

[30]     808 P.2d at 819; *see also Stevens v. Stevens*, 265 P.3d 279, 284-85 (Alaska 2011) (citing *Ogard*, 808 P.2d at 819); *Heustess v. Kelley-Heustess*, 158 P.3d 827, 832 (Alaska 2007) (holding that it was error to value the marital house at the time of separation, rather than the time of trial, though superior court stated three "unpersuasive" reasons for valuing at the time of separation).

[31]     *Ogard*, 808 P.2d at 819 (quoting L. GOLDEN, EQUITABLE DISTRIBUTION OF
(continued...)

separation of the parties."[32] The exceptions to the *Ogard* rule are limited: We have approved exceptions when one spouse dissipates assets or purposefully allows the value to decline during separation[33] or when the value of marital property has risen due to the efforts of only one spouse.[34] Occasionally, we have approved an earlier valuation date when a later valuation date was less reliable.[35] But the "reliability" cases are not "true exceptions to the principles of accuracy underlying *Ogard* because in these cases the more accurate valuation was the earlier one."[36] Additionally, we have held that the superior court's use of an earlier date was not reversible error when the parties did not present evidence of a later valuation[37] or object to the use of the earlier date.[38] When a trial court finds that an exception to the *Ogard* rule applies, it must make "specific findings as to why the date of separation is the more appropriate choice for valuation."[39]

---

[31](...continued)
PROPERTY § 7.01, at 207 (1983)).

[32] *Doyle v. Doyle*, 815 P.2d 366, 369 (Alaska 1991) (citing *Ogard*, 808 P.2d at 820).

[33] *E.g.*, *Foster v. Foster*, 883 P.2d 397, 399-400 (Alaska 1994); *Ogard*, 808 P.2d at 820.

[34] *Ogard*, 808 P.2d at 820.

[35] *Stevens*, 265 P.3d at 286 (citing *Henderson v. Henderson*, Mem. Op. & J. No. 1075, 2002 WL 844717, at *1-2 (Alaska, May 1, 2002)).

[36] *Id.*

[37] *See Brotherton v. Brotherton*, 941 P.2d 1241, 1245 (Alaska 1997).

[38] *See Odom v. Odom*, 141 P.3d 324, 336 n.48 (Alaska 2006).

[39] *Doyle v. Doyle*, 815 P.2d 366, 369 (Alaska 1991) (quoting *Ogard*, 808 P.2d at 820) (internal quotation marks omitted).

Mark claims that the superior court correctly valued the mortgage at the date of separation and made sufficient findings to warrant an exception. Mark contends that because he paid mortgage payments with his post-separation income and because the Seward real estate market was flat, the superior court did not err in departing from the *Ogard* rule.

But post-separation mortgage payments to maintain marital property are common and do not qualify as unusual circumstances.[40] Parties to a divorce frequently make post-separation payments to preserve the marital estate,[41] and the proper time to value the equity of the home is still the time of trial.[42] For example, in *Rodriguez v. Rodriguez*, the superior court properly valued the marital home at the time of trial.[43] On appeal, the husband argued that the superior court should instead have valued the home

---

[40] *See Rodriguez v. Rodriguez*, 908 P.2d 1007, 1012-13 (Alaska 1995) (valuing the home at the time of trial and addressing post-separation mortgage payments as a possible credit).

[41] *See Dodson v. Dodson*, 955 P.2d 902, 912 (Alaska 1998) (holding that it was not an abuse of discretion to deny husband a credit for post-separation mortgage payments he made to maintain the marital estate before entry of the divorce decree); *Harrelson v. Harrelson*, 932 P.2d 247, 253 (Alaska 1997) (concluding that the superior court did not abuse its discretion by denying credit for post-separation house payments even though other spouse had exclusive possession of the house during the separation); *Rodriguez*, 908 P.2d at 1013 (holding that while payment of rental value for use of the marital home may be required in some cases, trial courts have discretion whether to give credit for post-separation payments to maintain marital property); *Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992) ("[T]he fact that one party has made payments from non-marital income to preserve marital property should be considered as one of the circumstances to be weighed by the trial court in dividing the marital property.").

[42] *See Rodriguez*, 908 P.2d at 1013; *Ogard*, 808 P.2d at 819; *see also Stevens v. Stevens*, 265 P.3d 279, 285 (Alaska 2011) (citing *Ogard*, 808 P.2d at 819); *Heustess v. Kelley-Heustess*, 158 P.3d 827, 832 (Alaska 2007).

[43] 908 P.2d at 1012-13.

at the time of separation because his post-separation mortgage payments alone increased the value of the marital home.[44] But because post-separation mortgage payments did not justify divergence from the *Ogard* rule, we held that the superior court properly valued the home at the time of trial.[45] We emphasize that in almost all cases, valuing marital assets and debts at the time of trial is the most equitable approach because it provides the most accurate financial information.[46] Post-separation mortgage payments are common and thus will not ordinarily provide an exception to the *Ogard* rule.[47] As we discuss below and have held many times in the past, the appropriate method to account for post-separation payments to maintain marital property is to consider a credit in the third step of the property division.[48] We conclude, therefore, that the Orlander Avenue mortgage

---

[44]    *Id.*

[45]    *Id.*

[46]    *See Heustess*, 158 P.3d at 833 & n.14 (citations omitted); *Rodriguez*, 908 P.2d at 1012-13; *see also Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992) (citation omitted); *Doyle v. Doyle*, 815 P.2d 366, 369 (Alaska 1991) (citation omitted); *Ogard*, 808 P.2d at 819 (citations omitted); 2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 7.4, at 621 (3d ed. 2005).

[47]    *See Heustess*, 158 P.3d at 833 & n.14 (citations omitted); *Rodriguez*, 908 P.2d at 1012-13; *Ogard*, 808 P.2d at 819; *see also* cases cited *supra* note 41. To the extent that our decision in *Brown v. Brown* suggests otherwise, it is incorrect. *See Brown v. Brown*, 914 P.2d 206, 208 (Alaska 1996).

[48]    *See, e.g.*, *Partridge v. Partridge*, 239 P.3d 680, 691 (Alaska 2010) (concluding that the superior court should have considered crediting husband for post-separation debt payments from separate property in the property division); *Haines v. Cox*, 182 P.3d 1140, 1145 n.21 (Alaska 2008) (" '[T]he fact that one party has made payments from non-marital income to preserve marital property should be considered as one of the circumstances to be weighed by the trial court in dividing the marital property.' " (quoting *Ramsey*, 834 P.2d at 809)); *Heustess*, 158 P.3d at 833 & n.14;

(continued...)

should have been valued at the time of trial in accordance with our rule.[49]

In sum, Mark's post-separation payments do not merit diverging from our rule that ordinarily "the date of valuation . . . should be as close as practicable to the date of trial."[50] Because post-separation mortgage payments do not justify an earlier valuation date, we reverse and remand for revaluation of the home mortgage.

> **2.    The superior court may grant a credit for post-separation mortgage payments to maintain marital property, but any credit is to be considered in the final step of property division.**

Once the superior court has determined the value of the marital property, contributions made from post-separation income are to be considered during the final division of property.[51] But even where contributions are made from post-separation

---

[48](...continued)
*Edelman v. Edelman*, 3 P.3d 348, 354 (Alaska 2000); *Dodson v. Dodson*, 955 P.2d 902, 912 (Alaska 1998); *Harrelson v. Harrelson*, 932 P.2d 247, 253 (Alaska 1997); *Cox v. Cox*, 882 P.2d 909, 919-20 (Alaska 1994); *Ramsey*, 834 P.2d at 809 (citations omitted) (holding that in the final property division, courts should consider a credit for payments made from post-separation income to maintain marital property).

[49]    Mark also argues that the superior court did not err in departing from the *Ogard* rule because the Seward real estate market was flat. But even if the market was generally flat, as the superior court found, there may still have been some appreciation in value during the three years that Mark lived in the home during separation. If so, that change must also be taken into account.

[50]    *Ogard*, 808 P.2d at 819; *see also Compton v. Compton*, 902 P.2d 805, 812 n.9 (Alaska 1995) (citing *Moffitt v. Moffitt*, 813 P.2d 674, 678 (Alaska 1991)); *Ramsey*, 834 P.2d at 809 (quoting *Ogard*, 808 P.2d at 819).

[51]    *See, e.g.*, *Ramsey*, 834 P.2d at 809 (trial courts may credit a spouse for contributions from post-separation income in the final property division); *Doyle*, 815 P.2d at 369 n.5; *see also Chotiner v. Chotiner*, 829 P.2d 829, 835 (Alaska 1992) (quoting *Laing v. Laing*, 741 P.2d 649, 654 (Alaska 1987)) (recognizing that the superior court may consider, at the time of division, a spouse's contribution of substantial separate

(continued...)

property to maintain marital property, the superior court need not grant dollar-for-dollar credit.[52]

At the same time, the superior court should consider "whether any such credits should be offset by the value of the benefit of [the spouse's] post-separation occupancy of the house."[53] Where the use of marital property during separation effectively excludes the other spouse, the trial court should consider whether the marital estate should receive payment for the fair market rental value of the property.[54] In *Rodriguez v. Rodriguez*, we held that "the superior court did not abuse its discretion in ruling that [the husband] was not entitled to a credit for any post-separation payments he made on the parties' home."[55] We reasoned that "any benefit which he may have imparted to the marital estate was offset by the benefit he received from the estate by living rent-free."[56] Thus, we affirmed the trial court's determination that the husband in *Rodriguez* was not entitled to reimbursement for his post-separation mortgage payments

---

[51](...continued)
property to the marriage).

[52] *See Ramsey*, 834 P.2d at 809 (stating that there is "no fixed rule requiring credit in all cases" and that payments from separate income should be considered as one of the circumstances to be weighed by the trial court in dividing the marital estate).

[53] *Heustess*, 158 P.3d at 833 (footnote omitted); *see also Carr v. Carr*, 152 P.3d 450, 454 (Alaska 2007) ("The superior court may impute the rental value of one party's exclusive use of the marital residence after separation to that party when it equitably divides the marital estate between the parties." (citation omitted)).

[54] *See Heustess*, 158 P.3d at 833 & n.14 (citations omitted); *Rodriguez v. Rodriguez*, 908 P.2d 1007, 1013 (Alaska 1995) (citing *Wood v. Collins*, 812 P.2d 951, 958 (Alaska 1991)).

[55] 908 P.2d at 1013.

[56] *Id.*

because he had lived in the home after separation and therefore a credit would have given an unfair benefit to the husband.[57]

A trial court should therefore "consider payments made to maintain marital property from post-separation income when dividing marital property" and whether such a credit should be offset by the value of the benefit of post-separation use of the home.[58] There is no requirement that a trial court give credit for the post-separation payments in all cases.[59]

Here, the superior court valued the mortgage at the time of separation in order to credit Mark for the post-separation mortgage payments. Although we have held that trial courts should consider payments made to maintain marital property from post-separation income in the property division, the appropriate time to consider a credit for payments is in the third step — the final division of property.[60]

The superior court also failed to address the benefit to Mark of living in the marital home during separation. Patricia points out that she was "excluded from the home and forced to pay rent from her post-separation earnings." On remand, the superior court should consider both whether Mark should be given credit for post-separation mortgage payments he made from separate property and whether any such

---

[57]     *See id.*

[58]     *Id.* (quoting *Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992)) (internal quotation marks omitted); *see Heustess*, 158 P.3d at 833.

[59]     *See Rodriguez*, 908 P.2d at 1013.

[60]     *See, e.g.*, *Ramsey*, 834 P.2d at 809 (stating trial courts have authority to credit a spouse in the final property division for payments made from post-separation income to maintain marital property); *Doyle v. Doyle*, 815 P.2d 366, 369 n.5 (Alaska 1991).

credits should be offset by the value of the benefit of his post-separation occupancy of the marital home.[61, 62]

## V. CONCLUSION

Because the superior court improperly treated the jointly held 528 Second Avenue lot as Mark's separate property, we REVERSE that decision. The lot is marital property and should be divided in the equitable division of the marital estate. Since it was error to value the Orlander Avenue home equity at the time of separation, we REVERSE the mortgage valuation and REMAND for further proceedings.

---

[61] *See, e.g.*, *Haines v. Cox*, 182 P.3d 1140, 1145 (Alaska 2008) (citing *Korn v. Korn*, 46 P.3d 1021, 1024 (Alaska 2002)) ("[T]he trial court may award rental value but only as an adjustment to the equitable division of assets in the third step of the property-division process, if it provides a careful explanation."); *Heustess*, 158 P.3d at 833; *Carr v. Carr*, 152 P.3d 450, 454 (Alaska 2007); *see generally* 2 TURNER, *supra* note 46, § 6.86, at 458-63.

[62] We make no assumptions as to the relationship between the amount of mortgage payments and the value of the benefit Mark received by living in the marital home during separation.