Winona M. FLETCHER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10455.

Court of Appeals of Alaska.

June 10, 2011.

Beth G.L. Trimmer, Assistant Public Advocate, and Rachel Levitt, Public Advocate, Anchorage, for the Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, BOLGER, Judge, and ANDREWS, Senior Superior Court Judge.*

### OPINION

BOLGER, Judge.

In 1985, the superior court waived juvenile jurisdiction over Winona M. Fletcher, and she then pleaded no contest to two counts of first-degree murder and one count of second-degree murder. In 2005, Fletcher filed an application for post-conviction relief, alleging that new evidence required that her convic-

* Sitting by assignment made pursuant to article IV, section 11, of the Alaska Constitution and

tion be vacated. The new evidence consisted of the recantation of Fletcher's co-defendant and new research on juvenile brain development suggesting that she would have been amenable to treatment as a juvenile.

The superior court dismissed Fletcher's application, and she now appeals. We conclude that Fletcher's claim is non-jurisdictional and that she waived her right to contest any non-jurisdictional defects in the juvenile waiver proceeding when she entered her pleas of no contest.

### Background

In April 1985, Fletcher and her boyfriend Cordell Boyd forced their way into the home of Tom and Ann Faccio and Emilia Elliott. At the time, Fletcher was fourteen years old and Boyd was nineteen years old. Boyd demanded money from Mr. Faccio, who gave Boyd approximately $700. Fletcher shot and killed Ms. Faccio and Elliott, and either Boyd or Fletcher shot and killed Mr. Faccio.

The State filed a petition for waiver of juvenile jurisdiction over Fletcher. Boyd testified against Fletcher at the waiver hearing. Based on Boyd's testimony, the court found that, before the robbery, Boyd did not have any interest in killing the victims, but Fletcher explicitly stated that she was willing to kill them.

The court also found that Fletcher "was not forced, coerced, induced, or under influence by Boyd when she shot Ann Faccio and Emilia Elliott." Accordingly, the court concluded that there was probable cause to believe that Fletcher committed first-degree murder in the killing of Mr. Faccio, Ms. Faccio, and Elliott.

Five mental health professionals—Drs. James Harper, David Coons, Michael Rose, Irvin Rothrock, and Deborah Geeseman—testified about Fletcher's amenability to treatment. Dr. Harper testified that Fletcher has a moral deficiency that caused her to lack normal emotional feelings. Drs. Harper, Rothrock, Rose, and Coons testified that an individual with Fletcher's personality fea-

Administrative Rule 23(a).

tures has a "poor prognosis for rehabilitation." Dr. Geeseman was the only expert who believed that there was a likelihood that Fletcher could be successfully treated before she turned twenty.

The court concluded that Fletcher would be unamenable to treatment before reaching twenty years of age. The court therefore waived juvenile jurisdiction over Fletcher.[1]

Fletcher was indicted on three counts of first-degree murder. Fletcher then pleaded no contest to two counts of first-degree murder and one count of second-degree murder. The court originally sentenced Fletcher to consecutive terms of ninety-nine years of imprisonment for each count, but her sentence was later reduced to three consecutive, forty-five-year terms.

In December 1986—two days after Fletcher was sentenced—a newspaper article stated that Boyd had recanted his testimony from the waiver hearing when he said the killings were Fletcher's idea. In the article, Boyd stated that he told Fletcher to kill Ms. Faccio and Elliot. He indicated that he was telling the truth "for Winona's sake" and admitted that he "still care[d] for his one-time love."

In June 1987, Boyd was interviewed by Fletcher's attorney. During the interview, Boyd again stated that he lied during the waiver hearing. Boyd stated that he was primarily responsible for the murders and that he told Fletcher to kill the women.

On August 5, 2005, Fletcher filed an application for post-conviction relief. Fletcher alleged in her amended application that Boyd's recantation and new developments in juvenile brain research had altered the opinions of the mental health professionals who evaluated Fletcher's amenability to treatment. Fletcher alleged that this new evidence could have caused the court to deny the State's motion to waive juvenile jurisdiction and that

the adult court would not have had jurisdiction over her.

To support her application, Fletcher included updated opinions from three of the five mental health professionals who originally evaluated her amenability to treatment. In particular, Dr. Harper indicated that "had the new juvenile brain development research, as well as Mr. Boyd's new statement been available ... at the time [he] evaluated [Fletcher], this data would have affected [his] findings, inferences based on those findings, and ultimate opinion." Based on this new information, Dr. Harper indicated he "would almost certainly have concluded that Winona Fletcher could be (or could have been) rehabilitated by her 21st birthday."

The State filed a motion to dismiss Fletcher's application and Superior Court Judge Philip R. Volland granted the motion. Judge Volland concluded that Fletcher's application was barred by the statute of limitations because she did not present anything that legally qualified for the exception for newly discovered evidence. The court also concluded that Fletcher waived any defects in the juvenile waiver proceeding by pleading no contest in adult court.

Fletcher now appeals the superior court's order dismissing her application. We review this ruling as an order granting summary disposition, viewing the evidence in the light most favorable to Fletcher and independently determining whether the State was entitled to dismissal as a matter of law.[2]

### Discussion

A criminal defendant waives all non-jurisdictional defects in the previous proceedings when she enters a plea of guilty or no contest.[3] In other words, when a defendant enters a no contest plea, she "may not thereafter raise independent claims relating to the deprivation of constitutional rights

---

1. Former AS 47.10.060 (1984 & Supp. 1985) provides as follows:

   Waiver of jurisdiction. (a) If the court finds at a hearing on a petition that there is probable cause for believing that a minor is delinquent and finds that the minor is not amenable to treatment under this chapter, it shall order the case closed. After a case is closed under this

   subsection, the minor may be prosecuted as an adult.

2. *Lindeman v. State,* 244 P.3d 1151, 1154 (Alaska App.2011).

3. *Cooksey v. State,* 524 P.2d 1251, 1255 (Alaska 1974).

that occurred prior to the entry of the ... plea." [4] Jurisdictional defects, which cannot be waived, include those constitutional defects that cannot be cured—issues that would forever preclude the defendant's conviction, regardless of his factual guilt.[5]

■ The lack of subject matter jurisdiction is a jurisdictional defect that is not waived by a no contest plea.[6] But personal jurisdiction is not a jurisdictional issue of this kind-personal jurisdiction may be acquired by waiver or consent of the defendant.[7] To determine if Fletcher's claim is non-jurisdictional and barred by her plea, we must examine whether her challenge is to the court's subject matter jurisdiction or to an authority similar to personal jurisdiction. The proper classification of Fletcher's claim is a question of law on which we must exercise our independent judgment.[8]

■ The State points out that several courts, applying these distinctions, have held that defects in a juvenile waiver proceeding are non-jurisdictional defects that are waived or forfeited when the defendant enters a no contest plea.[9] For example, in *Rodriguez v. Ricketts*, the Ninth Circuit analyzed a case where a seventeen-year-old defendant, Roy Rodriguez, entered a guilty plea to second-degree murder after his case had been trans-ferred to superior court.[10] Rodriguez later filed for habeas corpus and claimed that his juvenile transfer proceeding was "infected by a number of constitutional errors." [11] The federal court held that "the state superior court always had original jurisdiction over this felony matter." [12] The determination of "whether to try Petitioner in superior court or in juvenile court, which is a division of superior court, does not go 'to the very power of the State to bring the defendant into court to answer the charge brought against him,' and thus does not raise a jurisdictional question." [13]

Likewise, in *State v. Marks*, the Arizona Court of Appeals addressed whether a juvenile waived his objection to the court's jurisdiction where the underlying juvenile transfer order was faulty.[14] While Richard Marks's appeal of the juvenile transfer order was pending, he was convicted as an adult.[15] His juvenile transfer order was ultimately vacated on due process grounds.[16] On appeal, Marks argued that, because the juvenile court did not properly transfer its jurisdiction, the adult court lacked subject matter jurisdiction.[17]

The court of appeals noted that the superior court is the court of general jurisdiction in Arizona and has jurisdiction over delinquent

---

4. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

5. *Menna v. New York*, 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

6. *See Wanamaker v. Scott*, 788 P.2d 712, 713 n. 2 (Alaska 1990) ("A court which does not have subject matter jurisdiction is without power to decide a case, this issue cannot be waived, and can be raised at any point during the litigation.").

7. *See Morgan v. State*, 635 P.2d 472, 479 n. 11 (Alaska 1981) (quoting 21 Am.Jur.2d *Criminal Law* § 379 (1965)); *see also S.B. v. State, Dep't of Health & Soc. Servs.*, 61 P.3d 6, 14 (Alaska 2002) (noting that the respondent waived any objection to personal jurisdiction by failing to raise it).

8. *In re Estate of Fields*, 219 P.3d 995, 1003 (Alaska 2009).

9. *See Rodriguez v. Ricketts*, 798 F.2d 1250, 1252 (9th Cir.1986); *State v. Marks*, 186 Ariz. 139, 920 P.2d 19, 21–22 (Ariz.App.1996); *State v. Bur-* *night*, 132 Idaho 654, 978 P.2d 214, 217–18 (1999); *State v. Yodprasit*, 564 N.W.2d 383, 384 (Iowa 1997); *Waynewood v. State*, 552 N.W.2d 718, 719 (Minn.1996); *Petition of Nilles*, 412 N.W.2d 116, 117–18 (S.D.1987); *State v. Griffin*, 914 S.W.2d 564, 567 (Tenn.Crim.App.1995); *State v. Kraemer*, 156 Wis.2d 761, 457 N.W.2d 562, 563–64 (Wis.App.1990).

10. 798 F.2d at 1251.

11. *Id.*

12. *Id.* at 1252.

13. *Id.* (quoting *Blackledge*, 417 U.S. at 30, 94 S.Ct. 2098 (citations omitted)).

14. 920 P.2d at 20–21.

15. *Id.* at 21.

16. *Id.*

17. *Id.*

juveniles and criminal cases amounting to felonies.[18] Although the counties could create juvenile departments within the superior court, this departmentalizing process did "not partition [the superior court's] general subject matter jurisdiction."[19] When a transfer proceeding is flawed, the "consequence is to deprive the adult division of personal jurisdiction over an improperly transferred defendant."[20] Since personal jurisdiction can be waived, Marks effectively waived his objection by failing to object within the specified time frame.[21]

In response to these cases, Fletcher points out that other courts have allowed a minor to withdraw a guilty plea to cure constitutional errors in a juvenile waiver proceeding. For example, in *Commonwealth v. Cotto*, a defendant entered guilty pleas to adult charges, specifically reserving the right to appeal the constitutionality of the juvenile waiver statute.[22] The Pennsylvania Superior Court stated in dicta that issues regarding the constitutionality of juvenile waiver proceedings are jurisdictional issues that are not waived by a minor's guilty plea.[23]

Alaska waiver proceedings appear to be more similar to the Arizona proceedings described in the *Ricketts* and *Marks* opinions. In Alaska, the superior court has jurisdiction over both juvenile and adult felony prosecutions.[24] So an attack on the quality of the evidence produced at the waiver hearing does not implicate the subject matter jurisdiction of the court.[25] The waiver hearing only affects the "jurisdiction over the minor," an issue of authority that is similar to personal jurisdiction.[26]

Moreover, Fletcher does not raise any serious claim about the constitutionality of the waiver proceeding itself. Fletcher received a hearing with full due process protections, where she was vigorously represented by counsel. The hearing was followed by a direct appeal where she had the opportunity to raise any defects in the waiver proceeding.[27] It was only after the hearing and the appeal were completed that Fletcher made the decision to enter a plea of no contest.

### Conclusion

Fletcher waived the right to contest the result of her juvenile waiver proceeding when she entered her pleas of no contest. In view of this conclusion, we are not required to address Judge Volland's ruling that Fletcher's application was untimely. We AFFIRM the superior court's order dismissing Fletcher's post-conviction application.

MANNHEIMER, Judge, not participating.

---

18. *Id.* at 21–22.

19. *Id.* at 22.

20. *Id.*

21. *Id.*

22. 708 A.2d 806, 808 (Pa.Super.1998).

23. *Id.* at 808 n. 1.

24. *See* AS 22.10.020(a) ("The superior court is the trial court of general jurisdiction, with original jurisdiction in all civil and criminal matters, including probate and guardianship of minors and incompetents.").

25. *See In re Estate of Fields*, 219 P.3d at 1005–06 (holding that, despite statutes specifying special probate procedures, the superior court had general jurisdiction over equity claims and probate jurisdiction over a decedent's estate).

26. *See State v. Ladd*, 951 P.2d 1220, 1221 (Alaska App.1998) (referring to the waiver decision as affecting "jurisdiction over the minor"); *see also State v. G.L.P.*, 590 P.2d 65, 70 (Alaska 1979) (referring to the waiver proceeding as the process by which the "superior court waives its juvenile jurisdiction over [the juvenile]").

27. *See W.M.F. v. State*, 723 P.2d 1298 (Alaska App.1986).