NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| DOUGLAS GREENE, | ) |
| | ) Supreme Court No. S-16473 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-14-10699 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| MICHELLE GREENE, n/k/a MICHELLE | ) AND JUDGMENT* |
| ZARKOVICH, | ) |
| | ) No. 1701 – October 24, 2018 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Michael Spaan, Judge pro tem, and Andrew Guidi, Judge.

Appearances: Douglas Walter Greene, pro se, Las Vegas, Nevada, Appellant. Maryann E. Foley, Law Office of Maryann E. Foley, Anchorage, for Appellee.

Before: Winfree, Maassen, Bolger, and Carney, Justices. [Stowers, Chief Justice, not participating.]

## I.     INTRODUCTION

The superior court divided the property of a couple during divorce proceedings. It also awarded the ex-wife $1,000 in attorney's fees on the basis that some of the ex-husband's litigation conduct was vexatious. After the property division order was issued, the ex-husband moved to recuse the superior court judge on the basis of

---

\*      Entered under Alaska Appellate Rule 214.

alleged bias and also challenged the process through which the case had been assigned to that judge. The ex-husband — now self-represented — appeals the denial of the recusal motion, contests the superior court's personal jurisdiction to make a property division, and challenges several specific determinations in the property division order, as well as the attorney's fee award. We find no abuse of discretion in the denial of the motion to recuse because the ex-husband failed to show bias resulting from an extrajudicial source. We also conclude that the superior court had personal jurisdiction over the ex-wife because she availed herself of the court by filing the divorce complaint. We find no error in the superior court's property division order. The remainder of the ex-husband's arguments are waived for failure to raise them in the superior court or for failure to adequately brief them in this appeal.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Michelle Zarkovich and Douglas Greene married in 2002. Prior to the marriage, the couple resided in Alaska, where Michelle is originally from. During most of the marriage, Michelle and Douglas resided in Kentucky. Douglas worked as a pilot for UPS with an Anchorage-based crew; Michelle worked on and off for various retail and real estate businesses.

The couple purchased a house in Anchorage in 2006 because Douglas was frequently there for work. They listed the Anchorage house as their residence on tax forms. Douglas occasionally stayed at the Anchorage house as his flight schedule demanded; he also permitted other crew members and his college-age son to stay there and collected some rent from them. Michelle helped furnish the Anchorage house and stayed there when she was visiting family in Anchorage, but she never resided there. Also her name does not appear on the deed.

Michelle and Douglas moved from Kentucky to Florida in late 2011 or 2012. They apparently left Kentucky to avoid a pending tax enforcement action in which the state was attempting to impose income taxes on Douglas's UPS earnings even though he claimed he was not a Kentucky resident for tax purposes. Douglas was terminated from his job with UPS in November 2013 and thereafter commenced a wrongful termination suit against UPS and his union.[1] He briefly worked for another airline in 2014 but alleges that UPS undermined his employment from that job before he completed his training. He was subsequently unable to find a job with another airline and was unemployed at the time of the 2016 divorce trial.

In early 2014 Douglas and Michelle decided to open a franchise location of Apricot Lane, a women's clothing store chain, in Florida. They signed a ten-year lease, and the store opened in June with Michelle as its manager.

B. Proceedings

1. Florida petition for divorce

Michelle filed a petition for dissolution of marriage in Florida state court in October 2014. In November Douglas moved to dismiss the petition for lack of personal jurisdiction. The motion to dismiss claimed that the Florida court lacked jurisdiction over Douglas because he was a resident of Alaska and had not maintained a marital domicile in Florida "for at least the last 8 years." It therefore asserted that the Florida court lacked jurisdiction to divide marital property or award alimony or attorney's fees. Attached to the motion was a November 4 affidavit by Douglas that offered various indicia of his Alaska residency: voter registration; federal income tax forms and returns; unemployment insurance records; licenses for driving, piloting,

---

[1] Douglas testified that, at the time of the trial, he had four separate lawsuits pending involving his UPS termination.

hunting, and fishing; vehicle title, registration, and insurance; Permanent Fund Dividend records; home ownership records; and property tax payments.

## 2. Alaska complaint for divorce, service of process issues, and motion to dismiss

In December 2014 while the Florida petition for divorce and Douglas's motion to dismiss were still pending, Michelle filed an additional complaint for divorce in Alaska superior court. The Alaska complaint alleged that Douglas was an Alaska resident and asked that the court equitably divide the marital property and award Michelle attorney's fees. That same day the superior court issued its routine orders: a summons to Douglas directing him to file a written answer and informing him that the case had been assigned to Superior Court Judge Olson, and a domestic relations initial order and order to file financial documents.

Michelle apparently had difficulty serving the complaint on Douglas and accordingly moved for alternative service of the complaint in January. The motion requested that Michelle be permitted to instead serve Douglas's Florida attorney. The superior court granted the motion for alternative service and ordered that service be made upon the Florida attorney by certified mail, process server, fax, or email. After effectuating service, Michelle filed a notice of voluntary dismissal without prejudice in the Florida state court, thereby ending the Florida divorce action.

Upon receiving the complaint, Douglas's counsel filed a limited entry of appearance in Alaska superior court for the purpose of seeking dismissal on the basis of lack of personal and subject matter jurisdiction. Douglas then moved to dismiss the Alaska divorce complaint on this basis. The motion asserted that because Michelle was a Florida resident and had not resided in Alaska for over a decade, the superior court lacked personal jurisdiction over her and therefore lacked the subject matter jurisdiction to grant a divorce or divide property. The superior court denied the motion to dismiss

without comment. Douglas's attorney then entered an unlimited entry of appearance in the matter and answered the complaint.

### 3. Sale of Anchorage house

While the case was pending, in June 2015 Douglas transferred title of the Anchorage house to his adult son. This transfer was apparently done without Michelle's or the superior court's consent, in violation of the court's initial domestic relations order issued at the commencement of the action. After Michelle brought the transfer to the court's attention, the court issued an order nullifying the transfer and instructing that the Anchorage house be sold and all proceeds kept in a trust account pending trial.[2]

### 4. Property division trial and order

Judge Olson's noncriminal caseload was administratively reassigned to Superior Court Judge Dani Crosby in November 2015.[3] But apparently Judge Crosby did not commence her judicial service until approximately April 2016. Accordingly, at a trial call in February 2016, Superior Court Judge Michael R. Spaan presided and indicated that he would preside at the trial.

The case proceeded to a two-day trial in March 2016 before Judge Spaan on the issue of property division; Michelle appeared in person and Douglas appeared telephonically. At the conclusion of the trial, on March 18, Judge Spaan entered oral findings regarding property division on the record.

---

[2] The house sold before trial.

[3] *See* Administrative Order 3AN-AO-15-16 (Alaska Super., Nov. 30, 2015) ("Effective November 30, 2015, open non-criminal cases currently assigned to Judge Paul Olson will be reassigned to Judge Dani Crosby. The list of cases to be retained by Judge Olson can be found at http://courts.alaska.gov/jord/retained-olson.pdf or from the Anchorage Clerk of Court."). The present case was not in the list of retained cases.

At a May 2016 status conference following the trial, Judge Crosby presided and asked if the parties consented to Judge Spaan retaining assignment of the case until the written findings of fact and conclusions of law were issued. Both parties consented. Judge Spaan presided over a July hearing at which the parties addressed remaining disputed issues concerning the division of property. Judge Spaan issued a written version of his decision in August, along with a decree of divorce.

The superior court first found that Douglas was an Alaska resident. The court then determined it equitable to divide the marital estate equally, although it did not explicitly reference the statutory factors.[4] The court then considered several disputed property issues. It found the Anchorage house to be marital property because it was acquired during the marriage, Michelle had helped decorate it, and Michelle had stayed there on occasion. Moreover Douglas had not offered any evidence in support of his assertion that it was purchased with non-marital funds. The court declined to grant Douglas credit for post-separation payments he had made on the Anchorage house mortgage on the basis that Douglas had stayed in the house during that time and had also collected some rent from other tenants and retained those funds for himself.

The court next considered the Apricot Lane business. It accepted Douglas's expert's valuation of the business and awarded the business to Michelle because the evidence showed she operated it. It assigned the obligations for the business loan, lease, and expenses to Michelle and required Michelle to remove Douglas's name from the lease and loan within 30 months.

---

[4] *See* AS 25.24.160(a)(4) (listing factors court must consider in equitably dividing marital estate, including length of marriage, age and health of parties, earning capacity of parties, financial condition of parties, conduct of parties, and circumstances and necessities of parties).

The court then turned to the litigation expenses stemming from Douglas's UPS lawsuits. It reasoned that because Michelle had testified that she disclaimed any interest in the lawsuits, she should also not be required to pay for the expenses stemming from the suits. The court assigned to Douglas "sole[] responsib[ility]" for all expenses associated with his UPS lawsuits, and if he recovered any money as a result of them, he would retain all of the recovered sums.

Regarding Douglas's UPS retirement accounts, the court stated that the marital portion would be divided equally by qualified domestic relations order (QDRO). Finally the superior court considered Michelle's request for attorney's fees. It reasoned that Douglas's motion to dismiss for lack of jurisdiction was "unnecessary and vexatious." It found that his transfer of title to the Anchorage house, in violation of the court's order, was also vexatious. Because this conduct "clearly increased [Michelle's] attorney fees," the court ordered that $1,000 be taken out of Douglas's share of the Anchorage house proceeds and paid to Michelle.

### 5. Motion to recuse

In June 2016 after the superior court entered its oral decision on the record, Douglas sent a letter to the presiding judge of the third judicial district that enumerated several complaints about Judge Spaan's statements during the trial and about the court's ultimate decision.[5] Douglas alleged that Judge Spaan was biased against him and had engaged in ex parte communication with Michelle and her family. Douglas argued that assignment of the case to Judge Spaan had been improper and requested that Judge Crosby preside over all matters pertaining to the case thereafter. Judge Spaan treated the letter as a motion to recuse, rejected all of the allegations, and denied the motion. That

---

[5] Even though Douglas was still represented by counsel at this point, he appears to have sent this letter himself.

same day, the chief justice issued an order assigning review of Judge Spaan's denial to Superior Court Judge Andrew Guidi.[6] Judge Guidi affirmed Judge Spaan's denial of Douglas's motion to recuse.

Douglas timely appeals the superior court's property division order and the denial of his motion to recuse Judge Spaan.

## III. STANDARD OF REVIEW

"The trial court has broad discretion in fashioning a property division in a divorce action."[7] "There are three basic steps in the equitable division of marital assets: (1) deciding what specific property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably."[8] The first step "may involve both legal and factual questions."[9] We review legal conclusions de novo, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[10] "Underlying factual findings as to the parties' intent, actions, and contributions to the marital estate are factual questions," which we review for clear error.[11] The superior court clearly erred only if "we are left with a definite and firm conviction based on the entire record that a

---

[6]   *See* AS 22.20.020(c) (requiring judge's denial of motion to recuse be reviewed by a judge assigned "by the presiding judge of the next higher level of courts").

[7]   *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994).

[8]   *Beals v. Beals*, 303 P.3d 453, 458 (Alaska 2013).

[9]   *Id.* at 459 (quoting *Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006)).

[10]   *Odom*, 141 P.3d at 330 (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)).

[11]   *Beals*, 303 P.3d at 459.

mistake has been made."[12] We similarly review the second step — valuation — for clear error.[13] Finally we review the superior court's equitable division for abuse of discretion and reverse only if the division is "clearly unjust."[14] We also review for abuse of discretion the decision to grant credit for post-separation mortgage payments.[15]

We review the denial of a motion to recuse for abuse of discretion.[16] We will not find an abuse of discretion "unless it is plain that a fair-minded person could not rationally [deny the motion] on the basis of the known facts."[17]

## IV. DISCUSSION

### A. The Superior Court Had Personal Jurisdiction Over Michelle, And Douglas Has Waived His Remaining Personal Jurisdiction Arguments.

Douglas challenges the superior court's personal jurisdiction on two bases. First he argues that the court lacked personal jurisdiction by virtue of improper service of process. He claims that he never received Michelle's Alaska divorce complaint and only learned of it from his Florida attorney. "Service of process is a preliminary requirement to a court obtaining personal jurisdiction over a party."[18] However a party

---

[12]     *Hockema v. Hockema*, 403 P.3d 1080, 1088 (Alaska 2017) (quoting *Urban v. Urban*, 314 P.3d 513, 515 (Alaska 2013)).

[13]     *Beals*, 303 P.3d at 459.

[14]     *Bellanich v. Bellanich*, 936 P.2d 141, 143 (Alaska 1997).

[15]     *Beal v. Beal*, 209 P.3d 1012, 1016 (Alaska 2009).

[16]     *Timothy W. v. Julia M.*, 403 P.3d 1095, 1100 (Alaska 2017).

[17]     *Id.* (quoting *Hanson v. Hanson*, 36 P.3d 1181, 1183 (Alaska 2001)).

[18]     *Beam v. Adams*, 749 P.2d 366, 367 (Alaska 1988); *see also* AS 09.05.015(a) (requiring that defendant be properly served for superior court to have personal jurisdiction).

waives any claim of insufficiency of process by failing to include the argument in either an Alaska Civil Rule 12(b) motion or responsive pleading.[19] Neither Douglas's motion to dismiss nor his answer contains a claim of insufficient process. Indeed Douglas did not contest the sufficiency of service at any point during the superior court proceedings. Accordingly he has waived this argument and cannot now raise it on appeal.

Douglas additionally challenges the superior court's personal jurisdiction on the basis that neither he nor Michelle was an Alaska resident at the time the suit was commenced. But even assuming Michelle was a Florida resident at the time she filed the complaint, this fact does not deprive the superior court of personal jurisdiction. "A spouse may submit to the personal jurisdiction of the court by instituting a suit for divorce . . . ."[20] Thus the superior court obtained personal jurisdiction over Michelle when she filed a complaint for divorce in Alaska court, thereby purposefully availing herself of the court's jurisdiction.[21]

Turning to the issue of Douglas's residency, we conclude Douglas has waived his argument that the superior court lacked personal jurisdiction over him by failing to raise it in his motion to dismiss. "[W]hen a party appears and defends an action" without first raising the defense of personal jurisdiction, "the party cannot later

---

[19] Alaska R. Civ. P. 12(h)(1) ("A defense of . . . insufficiency of process . . . is waived . . . if it is neither made by motion under [Rule 12(b)] nor included in a responsive pleading . . . .").

[20] 27A C.J.S. *Divorce* § 151, Westlaw (database updated Sept. 2018).

[21] *See Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("[A]n individual may submit to the jurisdiction of the court by appearance."); *Fletcher v. State,* 258 P.3d 874, 877 (Alaska App. 2011) ("[P]ersonal jurisdiction may be acquired by waiver or consent . . . .").

argue lack of personal jurisdiction."[22]  Douglas's motion to dismiss on the basis of personal jurisdiction focused exclusively on *Michelle's* lack of Alaska residency.  It did not mention, let alone contest, the superior court's personal jurisdiction over Douglas.[23]  Indeed Douglas's attorney's limited entry of appearance stated that the attorney was appearing only for the purpose "of seeking a dismissal . . . on grounds that the Alaska court has no personal jurisdiction over *one of the parties*," thereby implicitly conceding that the court had personal jurisdiction over Douglas.  (Emphasis added.)  After the superior court denied the motion to dismiss, Douglas fully participated in the proceedings and did not again challenge personal jurisdiction on any basis.[24]  Douglas therefore waived this argument, and we will not consider it.

### B.  Douglas Fails To Show Any Error In Reassignment To Judge Spaan.

Douglas alleges several reasons reassignment of the case to Judge Spaan

---

[22]  *Vanvelzor v. Vanvelzor*, 219 P.3d 184, 190 (Alaska 2009); *see* Alaska R. Civ. P. 12(h)(1) ("A defense of lack of jurisdiction over the person . . . is waived . . . if it is neither made by motion under [Rule 12(b)] nor included in a responsive pleading . . . ."); *see also Heppinstall v. Darnall Kemna & Co.*, 851 P.2d 78, 79 n.2 (Alaska 1993).

[23]  Douglas's motion quoted and applied AS 09.05.015(a)(12), which sets forth circumstances in which a court has personal jurisdiction "over a person served in [a divorce] action."  Despite relying on this provision, Douglas did not argue that the superior court lacked personal jurisdiction over the party served in the action (i.e., Douglas).  Rather, he argued that under this provision the court lacked jurisdiction over "the party initiating [the] divorce action" (i.e., Michelle).

[24]  Douglas's trial brief did mention in a footnote that Douglas had "not resided in Alaska for a long time," but this was not in the context of contesting jurisdiction but rather in the context of explaining why he transferred title of the Anchorage home to his son without the court's permission.  Moreover the brief was filed in March 2016, so this statement was not inconsistent with Douglas nevertheless being an Alaska resident when the action was commenced in December 2014.

was improper. First he argues that the court failed to provide him written notice of the reassignment. But even assuming the lack of written notice was error, Douglas must show that this error affected his "substantial rights."[25] He cannot satisfy this showing because, notwithstanding the lack of written notice, Douglas received notice of the reassignment during a trial call he attended in February 2016. During the trial call, Judge Spaan indicated that he would preside over the divorce trial scheduled to occur the next month. Neither party objected. Therefore the lack of written notice of the reassignment did not affect Douglas's substantial rights because he nevertheless received adequate notice and consented to the reassignment.

Second Douglas claims that he was deprived of his right to peremptorily challenge Judge Spaan's assignment. Alaska Statute 22.20.022(a) grants each party in a superior court proceeding the ability to change judge once as a matter of right. A party wishing to exercise this right must file a notice of change of judge within five days of receiving notice of judge assignment.[26] The peremptory right is waived if the party knowingly participates before that judge in a trial, pretrial conference, or "[a]ny judicial proceeding which concerns the merits of the action and involves the consideration of evidence or of affidavits."[27] Douglas had notice of the fact that Judge Spaan would be presiding over the trial no later than the February 2016 trial call, yet he failed to timely

---

[25] Alaska R. Civ. P. 61 ("[N]o error or defect in any ruling or order or in anything done or omitted by the court . . . is ground for . . . vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

[26] AS 22.20.022(c); Alaska R. Civ. P. 42(c)(3).

[27] Alaska R. Civ. P. 42(c)(4).

file a change of judge request. Although Douglas points to his June 2016 complaint letter to the presiding judge, this far exceeded the five-day deadline. And by participating in the trial before Judge Spaan, Douglas waived any right to file such a change of judge request and cannot now complain that he was deprived of such a right.[28]

Douglas next argues that the reassignment violated the Alaska Constitution because Judge Spaan exceeded the age of 70 at the time of the assignment. The Alaska Constitution does require all state judges to retire from active service by age 70.[29] However it also allows these judges to continue to serve by "special assignment[] as provided by court rule."[30] Accordingly Alaska Administrative Rule 23 permits the chief justice or designee to appoint by special assignment any retired judge to sit as a senior judge for a period of up to two years "where such assignment is deemed necessary for the efficient administration of justice."[31] The rule specifically allows for the special appointment of former judges who exceed the mandatory retirement age.[32] Pursuant to this power, the chief justice appointed Judge Spaan to serve as a superior court judge pro tempore in January 2016 and renewed this appointment in June 2016.[33] Judge Spaan's appointment was thus legally sound.

---

[28]    *Id.*; *see also Juelfs v. Gough*, 41 P.3d 593, 598 (Alaska 2002) ("Failure to file a timely notice precludes change of judge as a matter of right." (quoting Alaska R. Civ. P. 42(c)(3))).

[29]    Alaska Const. art. IV, § 11.

[30]    *Id.*

[31]    Alaska Admin. R. 23(a).

[32]    Alaska Admin. R. 23(b).

[33]    Special Order of the Chief Justice No. 6731 (Alaska June 14, 2016); Special Order of the Chief Justice No. 6674 (Alaska Jan. 5, 2016).

Finally Douglas claims that Judge Spaan was not chosen at random but rather was "hand picked" to preside over this case. There is no support for Douglas's suggestion that he was singled out for assignment to Judge Spaan, and Douglas fails to offer any evidence of this claim.

## C.    It Was Not An Abuse Of Discretion To Deny The Motion To Recuse.

Douglas argues that the superior court abused its discretion in denying his motion to recuse Judge Spaan. The bases for recusal of a judge are set out in AS 22.20.020(a). As relevant here, those bases include that the judge "feels that, for any reason, a fair and impartial decision cannot be given" or the judge "is related to a party or a party's attorney by consanguinity or affinity within the third degree."[34] In addition Canon 3(E) of the Alaska Code of Judicial Conduct requires disqualification if "the judge has a personal bias or prejudice concerning a party or a party's lawyer."[35] To necessitate recusal this personal bias must result from a nonjudicial source, not simply what the judge learned during the course of the litigation.[36] And bias cannot be inferred merely from adverse rulings.[37] This is because "[d]isqualification 'was never intended to enable a discontented litigant to oust a judge because of adverse rulings.' "[38]

Douglas alleged in his recusal motion that Judge Spaan is somehow associated with Michelle's family or her sister's family and had ex parte communications

---

[34]    AS 22.20.020(a)(2), (9).

[35]    *Hanson v. Hanson*, 36 P.3d 1181, 1184 (Alaska 2001) (quoting Alaska Code Jud. Conduct Canon 3(E)(1)(a)).

[36]    *Williams v. Williams*, 252 P.3d 998, 1010 (Alaska 2011).

[37]    *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015).

[38]    *DeNardo v. Corneloup*, 163 P.3d 956, 967 (Alaska 2007) (alteration in original) (quoting *Wasserman v. Bartholomew*, 38 P.3d 1162, 1171 (Alaska 2002)).

with one or both of these families. He noted that some of Michelle's family members were present at the trial. But Douglas offered no evidence of any affiliation between Judge Spaan and Michelle's family, let alone any evidence of ex parte communications. And the presence of Michelle's family at the trial does not raise an inference of impropriety; indeed Michelle's sister was present at the trial because she was a testifying witness. Without any evidence to substantiate Douglas's claim of association and ex parte contact between Michelle's family and Judge Spaan, it was not an abuse of discretion to deny the motion to recuse on this basis.[39]

Douglas argues that Judge Spaan's comments during the divorce trial evince bias. Specifically, he points to three statements by Judge Spaan regarding Douglas's lawsuits. First during Douglas's testimony describing his various lawsuits, Judge Spaan stated: "[I]t's giving me the chills thinking of that much litigation. I understand what your wife . . . ." Judge Spaan then cut himself off and instructed Douglas to continue in his testimony. Second Judge Spaan stated that Douglas had "a lot of lawyers." This comment was made in the context of questions regarding when and how many times Douglas, who was living abroad, traveled to the United States to procure legal counsel. Finally during the oral decision on the record, Judge Spaan told Douglas:

> I think you are obsessed by these lawsuits. I think your thinking is clouded. You're a litigious person. We're talking four separate lawsuits, and we have some pending. . . .
>
> . . . I think your unemployment today in the field you love is more based on your . . . overall fixation with these

---

[39] *See Wright v. Anding*, 390 P.3d 1162, 1170-71 (Alaska 2017) (affirming denial of motion to recuse on basis that movant "fail[ed] to point to any specific evidence beyond his unsubstantiated allegations that [the judge was] biased against him").

[lawsuits] than any plot by UPS.  Those are my feelings.  I hope I'm wrong.  I hope this is a great asset for you.

Judge Spaan made these comments in the context of discussing how the litigation expenses would be equitably divided and explaining why the court would assign all of those expenses to Douglas.  Judge Spaan explained that the outcome of the suits was uncertain — Douglas "may hit the jackpot," but in the meantime he would not "saddle [Michelle] with any ongoing obligations to fund those lawsuits, nor . . . give her any piece of them."

Judge Spaan's statements regarding Douglas's litigation fall short of the standard required to show bias because they do not result from an extrajudicial source, but rather are based only on evidence presented during the trial.[40]  Douglas testified extensively at the trial about his ongoing lawsuits stemming from his UPS termination and his belief that UPS and his union had conspired to terminate him.  And Judge Spaan was required to assess Douglas's litigation in order to render a decision on how the expenses for the litigation should be distributed in the property division order.  "[A] judge is not disqualified if the judge's 'knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.' "[41]

Judge Spaan's assessment of Douglas's litigation efforts and the merits of his various suits properly derived from the testimony.  Moreover although Judge Spaan's

---

[40]    The United States Supreme Court in *Liteky v. United States*, 510 U.S. 540 (1994), articulated an exception to the extrajudicial source doctrine, which we adopted in *Hanson*:  An opinion that "is so extreme as to display clear inability to render fair judgment" can evince judicial bias, even when it arises from knowledge gained during the proceeding.  36 P.3d at 1184 (quoting *Liteky*, 510 U.S. at 551).  Judge Spaan's comments also fall short of this very high standard.

[41]    *Hanson*, 36 P.3d at 1184 (quoting *Liteky*, 510 U.S. at 551).

comments arguably express a negative opinion of Douglas, the court's comment during the decision on the record also recognizes the chance that Douglas may succeed in his lawsuits and obtain a large damages award. It is therefore not as derogatory as other judicial comments we have deemed insufficient to show personal bias.[42] In sum Judge Spaan's comments regarding Douglas's litigation activity do not evince personal bias from an extrajudicial source, and thus recusal on this basis was not warranted.[43]

As his final argument regarding recusal, Douglas contends that Judge Guidi's review of the denial was improper. He argues that the recusal statute requires the denial of a motion to recuse to be reviewed by a judge of a higher court, not another superior court judge. He also appears to suggest that Judge Guidi was biased by virtue of sitting in the same judicial district as Judge Spaan and being Judge Spaan's "personal friend."

---

[42]    *Cf. id.* at 1186 (judge's comment that litigant "really hate[s] women" did not establish bias where no "extrajudicial source" of bias was shown (alteration in original)).

[43]    As further evidence of bias, Douglas points to Judge Spaan laughing during the proceedings and referring to Douglas as "the mayor." We have reviewed the transcript and concluded that nothing in the judge's demeanor or tone indicates bias. *Kinnan v. Sitka Counseling*, 349 P.3d 153, 161 (Alaska 2015). The remainder of the allegations in Douglas's recusal motion all amount to complaints about Judge Spaan's adverse decisions. We have repeatedly held that such complaints "are insufficient to show that [a judge's] decision not to recuse was an abuse of discretion." *Hymes v. DeRamus*, 222 P.3d 874, 888 (Alaska 2010); *see also Lacher v. Lacher*, 993 P.2d 413, 420-21 (Alaska 1999) (dismissing an argument for recusal as "little more than an expression of [appellant's] dissatisfaction with the superior court's ruling"). In addition for the first time on review, Douglas suggests that Judge Spaan may have some connection with UPS or with one of the federal judges presiding over one of Douglas's UPS-related suits. Because this allegation is entirely unsubstantiated and raised for the first time on appeal, we do not consider it.

There was nothing improper about Judge Guidi's review. The recusal statute, AS 22.20.020(c), requires that if a judge denies a recusal motion, the motion "shall be heard and determined by another judge assigned for the purpose by the presiding judge of the next higher level of courts or, if none, by the other members of the supreme court." Nothing in the recusal statute requires that a judge from a higher court *review* denial of recusal, only that review be *assigned* by such a judge. In accordance with this directive, the chief justice issued an order assigning review of the denial to Judge Guidi. Douglas offers nothing more than his bare assertions in support of his claim that Judge Guidi was biased by his association with Judge Spaan. His challenge to Judge Guidi's review is therefore unavailing.

**D.    The Superior Court Did Not Err In Its Property Distribution Order.**

**1.    Michelle's alleged misconduct**

Douglas devotes much of his briefing to faulting the superior court for failing to consider Michelle's alleged crimes and misconduct in its equitable-division decision. The crux of this argument is Douglas's contention that, around the time of their separation, Michelle withheld from Douglas a recording device that contained evidence incriminating UPS. Douglas appears to contend that, by withholding this evidence, Michelle undermined Douglas's case against UPS and thereby imposed significant financial consequences on the marital estate.

The superior court did not abuse its discretion in failing to consider Michelle's alleged misconduct in its equitable division of the marital estate. Douglas did not offer any evidence of this misconduct and did not attempt to quantify its financial impact. The only support in the record for Douglas's claims are the bare assertions in his own testimony. Given this record, it was not clearly unjust for the superior court to

fail to consider Michelle's alleged misconduct in equitably dividing the marital property.[44]

### 2. Anchorage house proceeds

Douglas challenges the superior court's finding that the Anchorage home was marital property subject to equitable division.[45] He claims that the house was his separate property and that Michelle never lived there. At trial he argued that he purchased the home and paid the mortgage using non-marital funds. He also notes a homestead waiver that Michelle signed when the house was purchased, which he argues waived any property interest Michelle may have had in the house.

"Marital property includes all property acquired during the marriage 'excepting only inherited property and property acquired with separate property which is kept as separate property.' "[46] The Anchorage home was presumptively marital property because it was purchased in 2006 — during the marriage.[47] Douglas failed to offer any evidence in support of his claim that the down payment on the home came from non-marital funds. Douglas therefore did not meet his burden to show that the home was

---

[44] *See Brandal v. Shangin*, 36 P.3d 1188, 1194 (Alaska 2001) ("[T]he party seeking deviation from [equal division of the marital estate] bears the burden of showing that the property division is clearly unjust.").

[45] Douglas characterizes the property division order as awarding Michelle 82% of the proceeds from the sale of the Anchorage house, but this is misleading. The marital estate was split equally between the parties. In order to effect this equal division, Douglas was required to make an equalization payment to Michelle comprising roughly 80% of the sale proceeds.

[46] *Schmitz v. Schmitz*, 88 P.3d 1116, 1125 (Alaska 2004) (quoting *Lewis v. Lewis*, 785 P.2d 550, 558 (Alaska 1990)).

[47] *See Pestrikoff v. Hoff*, 278 P.3d 281, 284-85 (Alaska 2012) ("For equitable distribution purposes, all property acquired during a marriage is presumed to be marital property.").

not marital despite the fact that it was purchased during the marriage. The superior court did not clearly err in characterizing the home as marital property.

Douglas also challenges the superior court's denial of his request for credit for post-separation payments he made on the Anchorage house mortgage. He argues that he is owed $26,343 in mortgage payments that he made between the date of separation and the date of the house sale. A court is required to consider and make findings on whether credit for post-separation mortgage payments is appropriate, but it is not required to grant such a credit.[48] The court must also consider whether this credit "should be offset by the value of the benefit of [the spouse's] post-separation occupancy of the house."[49]

The superior court declined to grant Douglas any credit for post-separation mortgage payments on the basis that, after separation, Douglas had continued to use the house and to collect rent from tenants. This was not an abuse of discretion; indeed the superior court was required to consider Douglas's occupancy of the home in deciding whether to grant him credit.

Douglas protests that he did not use the house after November 2014 and did not collect rent for many months during separation. However he acknowledges he allowed his son to live there during this time. There is "no fixed rule requiring credit [for

---

[48]    *See Berry v. Berry*, 978 P.2d 93, 96 (Alaska 1999).

[49]    *Beals v. Beals*, 303 P.3d 453, 464 (Alaska 2013) (alteration in original) (quoting *Heustess v. Kelley-Heustess*, 158 P.3d 827, 833 (Alaska 2007)).

post-separation payments made to maintain marital property] in all cases,"[50] and on this record we do not find an abuse of discretion.[51]

### 3. Apricot Lane

Douglas also argues that Michelle misidentified some of her personal expenses as Apricot Lane business expenses in order to make the business appear less profitable than it actually was. However this argument is inapposite given that the superior court rejected Michelle's valuation of the business in favor of Douglas's expert's valuation and the valuation Douglas requested in his property spreadsheet.

Douglas next faults the superior court for failing to require Michelle to share in the cost of his expert valuation of the Apricot Lane business. "The superior court has broad discretion to award costs and fees in a divorce action."[52] It is vested with this discretion in order "to ensure that 'both spouses have the proper means to litigate the divorce action on a fairly equal plane.' "[53] In exercising this discretion, "the court 'must focus on the parties' relative economic situations and earning capacities.' "[54] The superior court denied Douglas's request to require that Michelle pay a share of his expert valuation costs, reasoning that Michelle presented her own determination of the business's value and that each party should pay for his or her respective valuation. This

---

[50]     *Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992).

[51]     *See, e.g.*, *Hockema v. Hockema*, 403 P.3d 1080, 1091 (Alaska 2017) (no abuse of discretion in denying credit to husband when he lived in house after separation); *Hansen v. Hansen*, 119 P.3d 1005, 1011-12 (Alaska 2005) (no abuse of discretion when the superior court gave "clear reasons for its decision" to deny credit).

[52]     *Horning v. Horning*, 389 P.3d 61, 65 (Alaska 2017).

[53]     *Id.* (quoting *Stevens v. Stevens*, 265 P.3d 279, 290 (Alaska 2011)).

[54]     *Id.* (quoting *Stevens*, 265 P.3d at 290).

denial was reasonable in light of the superior court's finding that Douglas and Michelle had equal earning capacities, a finding that Douglas does not show was clearly erroneous. The superior court did not abuse its discretion in requiring Douglas to pay the entire cost of his own valuation expert.

### 4. Equalization payment

As his final challenge to the property division order,[55] Douglas claims that the superior court's requirement that he pay an equalization payment to Michelle subjected him to "double jeopardy" and awarded Michelle "a windfall." However the equalization payment is merely a necessary component of the court's property division findings and its determination that the marital estate should be divided equally. Because we affirm the property division order, we also affirm the equalization payment. Douglas's "double jeopardy" argument is too cursory to comprehend and therefore need not be addressed.[56]

### E. Douglas Has Forfeited His Attorney's Fees Argument, And Regardless The Award Was Not An Abuse Of Discretion.

Douglas finally appears to contend that the superior court abused its discretion in awarding Michelle attorney's fees. The superior court granted Michelle's request for attorney's fees and awarded her $1,000, to be subtracted from Douglas's share of the Anchorage house proceeds. The court reasoned that this award was justified

---

[55] Douglas also appears to challenge the superior court's QDRO awarding half of the marital portion of his UPS retirement accounts to Michelle. However Douglas's argument on this issue relies on a prior version of the QDRO that was subsequently revised due to technical errors. The error that Douglas complains of in the initial QDRO has therefore already been corrected and need not be addressed on appeal.

[56] *See Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."); *see also Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010) (applying this rule equally to pro se litigants).

because it found some of Douglas's conduct throughout the course of the case to be "unnecessary and vexatious," and this conduct had "clearly increased [Michelle's] attorney fees." The court specifically cited Douglas's motion to dismiss for lack of jurisdiction and his transfer of title to the Anchorage home in violation of the court's order.

Douglas's challenge to this fee award is cursory and difficult to understand. He again alleges that this fee award amounted to "double jeopardy" and returns to his allegations regarding Michelle's alleged misconduct. He has therefore forfeited any challenge to the attorney's fee award for failure to adequately brief it.[57] In any event, Douglas's transfer of the Anchorage house in violation of the court's domestic relations initial order is adequate to justify this award.

## V. CONCLUSION

The superior court's judgment is AFFIRMED.

---

[57] We have made an effort to identify and discuss each of the arguments raised by Douglas on appeal. However much of Douglas's briefing is difficult to follow, so some arguments may have been overlooked. To the extent that Douglas requests relief from the judgment under Alaska Civil Rule 60(b), we do not consider this argument on appeal because (1) Douglas did not move for Rule 60(b) relief in the superior court and (2) this argument was raised on appeal for the first time in a reply brief. Douglas also appears to request restitution damages based on Michelle's conduct that allegedly resulted in his termination from UPS. However he did not raise this claim in the superior court, and this property division case is not the proper vehicle for a tort damages claim. Finally Douglas makes vague reference to the United States and Alaska Equal Protection and Due Process Clauses, but his opening brief merely notes that he is guaranteed such rights and that they were violated. We need not address this cursory argument.